# SCHARTOW *v.* SCHLEICHER.

PATENTS; INTERFERENCE; DILIGENCE.

1. Whether the making of a model of a snap hook, so constructed that it may be attached to a chain without the necessity of welding the chain, constitutes reduction to practice, in view of the simplicity of the device (citing *O'Connell* v. *Schmidt*, 27 App. D. C. 77, and *Burson* v. *Vogel*, 29 App. D. C. 388), the invention is so simple that the construction of a model containing all the elements of the invention, will amount to a demonstration of utility.

2. The party to an interference involving the invention of a snap hook of simple construction, who was the first to conceive, and who did not know, when he filed his application, that the other party had entered the field, is not lacking in diligence, where he made a model demonstrating the utility of the invention, immediately had castings made for patterns, and, five months afterwards, made his first shipment, which, four months afterwards, was followed by the filing of his application, and where part of the time following the making of the castings he was away from home, and at other times only delayed the exploitation of the invention because of press of other work, and there is nothing to show any want of good faith on his part.

No. 635. Patent Appeals. Submitted May 10, 1910. Decided May 26, 1910.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.        *Reversed.*

*Mr. W. H. Singleton* for the appellant.

*Mr. C. P. Byrnes* and *Mr. George H. Parmelee* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents in an interference proceeding, reversing the unanimous decision of the Examiners in Chief, and sustaining the view taken by the Examiner of Interferences.

The issue is contained in six counts, which, however, are sufficiently illustrated by the first and fifth, as follows:

"1. In a hook, a body portion having a hook, member at each end, said hook members lying in different planes, and a tongue member pivotally connected to the body portion at an intermediate point, and having one of its arms forming a tongue which co-operates with one of the hooks of the body portion, and its other arm constituting a hook member which co-operates with the other hook member of the body portion to form an eye, said co-operating members being interfitted, together with a spring arranged to act upon the tongue to close both hook members; substantially as described."

"5. A snap hook having its hook and tongue members pivotally connected and extended rearwardly of such connection, the extensions being each formed with a hook portion, and said hook portions being halved together to form a separable eye, together with a spring for holding both the hook and eye closed; substantially as described."

The invention in controversy, as will be gathered from reading the above claims, is a snap hook in which the shank of the hook and the pivoted tongue member extend beyond the path of the tongue member so as to form a separate eye for engagement with the chain link, thus providing a separable eye capable of engaging the link of the chain without welding. The Examiner of Interferences found that Frank E. Schartow conceived the invention, and made one or more models embodying it, prior to the earliest date claimed by William A. Schleicher. The Examiner ruled, however, that there was no evidence of reduction to practice by Schartow until after Schleicher entered the field, and that he had failed to show

diligence during the intervening time; hence that Schleicher was entitled to a judgment of priority.

The Examiners in Chief ruled that Schartow's exhibit snap hook, which he made a few days after making his first model, and before the entry of his adversary into the field, constituted a reduction to practice. The Board held, however, that, since in his preliminary statement he had alleged "that he first embodied his invention in a full-sized machine, which was completed about the 3d day of April, 1907," Schartow is confined to that day as the date of his reduction to practice, "although, as already indicated, he actually reduced the invention to practice by making the exhibit, 'Schartow's Improved Fire Department Snap Hook' in January, 1907." The Board found that Schleicher's constructive reduction did not occur until September 3d, 1907, his filing date, and awarded priority to Schartow. The Commissioner agreed with the other tribunals that Schartow was the first to conceive the invention, and adopted the view of the Examiner of Interferences, that neither the making of the early models nor the making of the full-sized device, in April, 1907, constituted a reduction to practice; that the testimony failed to show diligence at the proper time; and that Schleicher was entitled to the award of priority.

Snap hooks were, of course, well known in the art when these parties entered the field. What each sought to accomplish was to produce a hook capable of being attached to a chain without the necessity of welding the chain. To be of any practical utility, these inventors knew that such a device must be simple in its nature and easily manipulated. This probably accounts for the very close resemblance between the two devices. The testimony, as found by the three tribunals, is absolutely convincing that Schartow is the prior inventor. On Thanksgiving Day, 1906, he made a model which fully embodied and disclosed the invention. On the same day he exhibited it to others, whose corroborative testimony is in the record. A few days later he made another snap hook out of brass. This he also showed to others. Shortly thereafter he delivered said model to a pattern maker for the purpose of having a master pattern made. Not only were these exhibits

introduced in evidence, and clearly identified, but the testimony and bill of the pattern maker were also introduced. A witness by the name of Hanley testified that, just prior to his leaving for New York on January 4th, 1907, which was before the earliest date claimed by Schleicher, Schartow gave him a snap hook, which he identified as "Schartow's Improved Fire Department Snap Hook," for the purpose of having the witness take it to New York and show it to the trade. This the witness did, and in his testimony stated the name and address of the representative of saddlery hardware concerns to whom he exhibited the snap hook in New York. None of this testimony was impeached in any way. Early in March Schartow delivered his master pattern to the manager of the Racine Malleable & Wrought Iron Company, Racine, Wisconsin, where Schartow resided, for the purpose of having brass castings made for patterns. A little later Schartow was informed that this firm was not casting brass at that time. He thereupon applied to another concern, and received his first casting in April, 1907. Immediately thereafter Schartow was away from home for about six weeks, and upon his return, owing to press of work, he delayed proceeding with the exploitation of his device until early in September. His first shipment of hooks was made on September 18, 1907. He filed his application on January 9th, following.

Without stopping to inquire whether the making of a model hook by Schartow in December, 1906, constituted a reduction to practice, in view of the simplicity of the device (*O'Connell v. Schmidt,* 27 App. D. C. 77; *Burson v. Vogel,* 29 App. D. C. 388), we pass immediately to a consideration of the question whether under the evidence Schartow was reasonably diligent thereafter. We think that the Commissioner has not given sufficient consideration to the important fact that this is an invention of so simple a nature that the construction of a model containing all the elements of the invention amounts to a demonstration of utility. When, therefore, Schartow constructed his exhibition hook, and showed it to others, it is apparent from the testimony that he became thoroughly convinced that his invention was complete, and that nothing fur-

ther remained to be done except to exploit it. He did not lay it aside, but proceeded almost immediately to have castings made for patterns. Thus far he was unusually diligent. We think the comparatively short delay following, in the circumstances of this case, is satisfactorily explained. Schartow was acting independently of Schleicher, it not being even suggested that, prior to the filing of his application, he had any knowledge that another had entered the field. This is not a case where an incomplete invention has been put to one side until another has worked out the problem. Neither is it a case where the evidence leaves it doubtful whether the one first to conceive at all times intended to give his invention to the public at an early date. In other words, Schartow's good faith is completely established by the record. Without intimating any opinion upon the precise question decided by the Commissioner, we rule that Schartow was entitled to the award of priority, and hence reverse the decision of the Commissioner.

The clerk will certify this opinion as by law required.

*Reversed.*

Mr. Chief Justice SHEPARD did not sit with the court in the hearing and determination of this appeal, his place in his absence having been taken by Mr. Justice BARNARD of the supreme court of the District of Columbia.