25 C.C.P.A.(Patents)

### GOODALE v. LUND.*
### Patent Appeal No. 3931.

Court of Customs and Patent Appeals.

May 31, 1938.

*Rehearing denied June 27, 1938.

Elmer Stewart, of Washington, D. C., for appellant.

Donald M. Carter, of Chicago, Ill., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention of the subject matter defined in the counts in issue—1 to 4, inclusive—to James K. Lund, appellee.

The invention in issue relates to air valves for steam radiators. The valves are designed to permit air to be expelled, prevent the escape of steam or water, and maintain a vacuum in the "system."

Count 2 is sufficiently illustrative of the involved counts. It reads: "2. In a steam radiator valve, a valve casing having a seat, a valve adapted to engage the seat, a thermostatic container to close the valve in the presence of heat, a bellows of inherent coil spring tendencies which engages the thermostatic container and tends to close the valve when pressure in the valve casing is less than pressure in the bellows, means for always admitting atmospheric air pressure to the bellows, and means for preventing excessive collapse of the bellows in the presence of external pressure."

The interference is between appellant's application No. 661,604, filed March 18, 1933, and appellee's application No. 689,-841, filed September 18, 1933.

Appellee is the junior party and the burden was upon him to establish priority

of invention by a preponderance of the evidence.

In his preliminary statement, appellant alleged conception of the invention in March, 1932, and reduction of it to practice on November 2, 1932. However, he submitted no evidence, and is, therefore, restricted to his filing date—March 18, 1933—for conception and reduction to practice.

In his preliminary statement, appellee alleged conception of the invention June 1, 1930; disclosure of it to others on the same date; and reduction to practice July 1 of that year. Appellee submitted considerable evidence. It clearly appears therefrom that appellee conceived the invention as early as August 1, 1930, as held by each of the tribunals of the Patent Office. That holding by the Board of Appeals is not challenged by counsel for appellant.

The tribunals of the Patent Office concurred in holding that appellee had successfully reduced the invention to practice as early as January, 1931, but that if on appeal it should be held that the tests to which appellee's valve was subjected were not sufficient to establish a successful reduction to practice as early as January, 1931, appellee had clearly established that he was diligent from August, 1930 to the time of the filing of his application (September, 1933), and was, therefore, entitled to an award of priority.

Counsel for appellant contends that the evidence is insufficient to establish either that appellee successfully reduced the invention to practice prior to his filing date, or that he was diligent in attempting to complete the invention immediately prior to appellant's filing date—March 18, 1933—and thereafter until appellee filed his application—September 18, 1933.

It appears from the uncontradicted evidence of record that appellee's valve (Exhibit No. 3), which conforms to the counts in issue, was tested in the air valve department of the Dole Valve Company, appellee's assignee, on an apparatus "designed to simulate conditions of a heating system." The apparatus referred to by the witnesses consists of a "steam test rack" and a "vacuum test rack."

The following description of the "steam test rack" is taken from the testimony of the witness Stanwich:

"Q. 22. What was this test rack you have spoken of? A. This *test rack is the same as a steam radiator,* which has a series of approximately three inch diameter pipes which are mounted vertically and have a number of tapped holes into which the air valves are screwed into. They are again tested for air venting and steam shut off.

"Q. 23. And what is done to the rack when these valves are tested for air venting? A. The valves are in the rack when they are tested. The air goes into the testing rack and goes through the valves. It goes through the pipes into where the valves are screwed into it.

"Q. 24. And how are the valves tested for steam shut off? A. The air is shut off, and the steam is then turned on, the steam going through the pipes and through the valves. They are then tested with a small chrome plated disc which is put alongside the venting hole. If any steam shows on the disc, the valves are rejected." (Italics ours.)

Photographs of the "steam test rack" were introduced in evidence as Exhibits Nos. 6 and 7.

Exhibit No. 3 was also tested on a "vacuum rack" to see if it held vacuum. A photograph of the vacuum rack was introduced in evidence as Exhibit No. 8.

The procedure followed in making the tests to which Exhibit No. 3 was subjected was related by the witness Grosso. His testimony in that regard is as follows:

"Q. 24. And when was this valve Lund Exhibit 3 assembled by you? A. In August 1930.

"Q. 25. What was done with this valve Lund Exhibit 3 after you assembled it? A. I then put that on steam test and tried it out and it worked good, *so I tried it out on vacuum, and it worked perfect.* Then I put it back on the steam tester and left it there for a period of three years, and every week, some times every two weeks, I *would take the valve off of the steam test rack and would put it on the vacuum rack there to see if it held vacuum;* when it did, we would put it back on the steam rack again and leave it there.

"Q. 26. Then as I understand you, *you changed the valve back from the steam test rack to the vacuum rack every week or so, and this continued for a period of about three years.* A. *Right.* (Italics ours.)

It is clear from the evidence that the tests described by the witnesses were continued for about three years; that the valve operated successfully during that period of time; that the Dole Valve Company had experienced difficulty with another type of air valve patented by appellee, referred to in the record as valve "2B"; and that as that company was desirous of giving a five-year guarantee on valves of which Exhibit No. 3 is representative, the exhibit was subjected to a long and protracted test not for the purpose of ascertaining whether the valve would operate successfully, but rather to determine whether it would operate successfully over an extended period of time. It further appears from the evidence that in the fall of 1933, shortly after the completion of the three-year tests hereinbefore referred to, valves like Exhibit No. 3 were produced commercially by the Dole Valve Company, and, at the time of the taking of the testimony in this case (August, 1935), more than 40,000 of them had been produced and sold.

It is argued by counsel for appellant that the evidence does not disclose the basis for the assertions by the witnesses that the tests to which Exhibit No. 3 was subjected were successful.

In answer to that argument, it may be said that the witnesses definitely stated, as indicated in the quoted excerpt from the testimony of the witness Grosso, that Exhibit No. 3 worked perfectly on both the steam testing rack and the vacuum rack; that is, it prevented the escape of steam while permitting air to be expelled, and held vacuum when placed on the vacuum rack. Furthermore, the witness Pratt, salesman in the air valve department of the Dole Valve Company, stated that he had seen Exhibit No. 3 on the steam test rack and the vacuum rack in December, 1930, and frequently thereafter for a period of about three years. We quote from his testimony with reference to the success of the tests and operation of the valve:

"Q. 19. Please state how this vacuum valve Lund's Exhibit 3 operated when placed on the steam table and the vacuum rack at the time you saw it there? A. When I first saw this valve on the steam test table, I was shown how it freely vented air, how it closed on the contact of the float with steam. After this demonstration it was removed from the steam testing table and screwed on to the vacuum testing rack along with a group of No. 2B

vacuum valves. We then tested it for holding a vacuum, and it operated satisfactorily. I may also add that this valve operated satisfactorily on the steam testing table as well.

"Q. 20. Will you state whether or not this valve Lund's Exhibit 3 held the vacuum properly when the you first saw it on the vacuum rack? A. This valve did hold a vacuum satisfactorily.

"Q. 21. Please state whether or not you saw this valve, Lund's Exhibit 3, in operation on these steam vacuum racks at other subsequent times, and if so, for about what period. A. I frequently saw Exhibit No. 3 on the steam table at least once a week for the following three years."

It is further contended by counsel for appellant that "although the evidence is not clear it would appear that the vacuum rack shown in Lund's exhibit 8 but not described, shows that the valve would be incapable of responding to the action called for by the counts, because, to detect any change in vacuum, a manometer hose had to cover the valve body and so would shut off the atmospheric pressure from the hollow valve stem and the bellows," and that the tests on the vacuum rack were not sufficient, nor of the character to indicate that the valve would work in accordance with the invention in issue.

Other reasons, technical in character, are advanced by counsel for appellant in an effort to show that the tests to which the valve—Exhibit No. 3—was subjected were insufficient to establish reduction to practice. It is argued that when the valve was removed from the steam test rack and placed on the vacuum rack, material changes took place in it. (That argument contains a statement of fact not supported by the evidence of record.) It is further argued by counsel that in the normal operation of a steam heating system there is a gradual development of vacuum in the closed valve, and that there was no such gradual development of vacuum in the apparatus on which Exhibit No. 3 was tested.

The tests to which appellee's Exhibit No. 3 was subjected were those generally resorted to by the Dole Valve Company in its efforts to ascertain the commercial practicability and value of air valves for steam heating systems. Furthermore, there is no evidence of record to indicate

that the technical theories advanced by counsel for appellant have any practical application to the proper testing of an air valve such as Exhibit No. 3. If those theories have practical application to the issues in the case, it should appear from the evidence of record, not merely from the arguments of counsel.

We are of opinion that the record clearly establishes that appellee reduced the invention to practice as early as January 1931, as held by the tribunals of the Patent Office, and that he is entitled to an award of priority.

The decision of the Board of Appeals is affirmed.

Affirmed.