32 C.C.P.A.(Patents)

## BOWERS v. VALLEY et al.

## VALLEY v. BOWERS et al.

Patent Appeals Nos. 4993, 4995.

Court of Customs and Patent Appeals.
April 9, 1945.

Rehearing Denied May 22, 1945.

H. L. Kirkpatrick and C. E. Hammett, Jr., both of Boston, Mass., and M. H. Hamilton, of Lexington, Mass., (Charles F. Meroni, of Chicago, Ill., of counsel), for Bowers.

Leonard L. Kalish, of Philadelphia, Pa. (Arthur N. Klein, of Bayonne, N. J., of counsel), for Valley.

John Flam, of Los Angeles, Cal., for Ernst.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The two junior parties, Bowers and Valley, have here appealed from the decision of the Board of Interference Examiners of the United States Patent Office in a three-party patent interference proceeding, awarding to the senior party, Ernst, priority of invention of the two counts involved.

The interference is between three applications. That of Bowers, Serial No. 365,600, was filed November 14, 1940; that of Valley, Serial No. 290,355, August 16, 1939; and that of Ernst, Serial No. 237,-502, October 28, 1938.

The two counts are:

"1. A two-piece oil-control ring comprising an annular ring member having a generally continuous uniform channel along its outer periphery, oil-draining passage-ways leading from said channel to the inner periphery of said ring member, and a second annular ring member of an axial width substantially less than the axial width of said channel floating loosely inside said channel and adapted to reciprocate axially to and fro therein, with the side walls of said channel limiting the relative axial movements of said floating ring member.

"2. An oil ring having an annular recess formed by spaced flanges, as well as apertures extending through the ring and between the flanges, and a scavenger ring located between the flanges and having a thickness substantially less than the space between the flange, and having freedom of axial motion limited by said flanges."

Count 1 originated in the Valley application and count 2 in that of Ernst.

The invention relates to an improvement in a two-piece oil-control ring, such as is used on the pistons of internal combustion engines, e.g., those of automobiles. The counts are broad and do not indicate that the ring is to be used in internal combustion engines, but it is clear from the specifications of the three applicants that the parties were interested in overcoming a difficulty encountered in the formation of carbon on piston rings in internal combustion engines. Each of the parties emphasizes the fact that an oil-control ring, such as is disclosed in each of the applications, is so constructed that it consists of two parts, the main oil ring having an annular recess into which a so-called "scavenger ring" is placed between the flanges of the recess. The scavenger ring is of less thickness than the width of the channel, whereby it is permitted to move freely up and down within the channel. This motion is said to break up the carbon deposit and cause it to move away from the ring, thereby avoiding the undesirable effects of carbon formation on the ring.

Since Bowers and Valley were both junior to Ernst, the burden was upon them to prove priority by a preponderance of the evidence. They took testimony, and Ernst stood on his record date of October 28, 1938.

The board awarded Bowers, and we think properly so, a date of conception as of April 1937, and Valley a date at least as early as the fall of 1931. It held, however, that Bowers had not proved a reduction to practice prior to his filing date for the reason that there had been no satisfactory test of the ring and that there was a lack of diligence on his part to make his earlier conception of value in proving priority.

As to Valley, the board held that subsequently to his conception in the fall of 1931 he did nothing, and for approximately six years until March 1937, showed little, if any, activity in connection with the ring. There is some evidence of his having had a ring made in 1937 by one Faulkner, but the record is silent as to any test having been made of the same. He did nothing further until November 1938. This, of course, was after Ernst's filing date. He then made an effort to secure rings constructed in accordance with his early conception and finally did purchase from Wilkening Manufacturing Company a set of rings for 50 cents apiece, with a view toward testing them in a Dodge truck. These were presumably made in March 1939, and they were installed in the truck. The board found, on the instant record, that no tests proving the utility of the invention were ever made by Valley until after Ernst's filing date, and that no diligence was shown during the critical period.

Valley contended before the board and contends here that the ring is of such a character as not to require a test; that the mere construction of the ring amounted to a reduction to practice. He also offers as an excuse for lack of diligence

a claim that he had no funds for use in bringing about a test. That he has failed to show such lack of financial ability to develop the invention as would excuse lack of diligence would seem to be too clear for extended discussion. While the evidence shows that he was a poor man, it does not appear that at any time he was so lacking in funds as to have prevented a proper test at the proper time. There is testimony to the effect that in 1937 and 1938 he had an income of forty dollars a week and that his expenses, which he paid out of that income, came to approximately the same amount. The record shows, however, that he did buy a Chrysler car in 1937; and, furthermore, no lack of funds prevented him from further activity except at a date too late to be of advantage here.

█ █ We think the board properly disposed of Valley's case by holding that there was no proper diligence toward reducing his invention to practice and no acceptable excuse for such lack of diligence. Moreover, it seems too obvious to require extended discussion that a piston ring is not a device of such simple character and readily apparent efficacy as to fall within the holding of such cases as Mason v. Hepburn, 13 App.D.C. 86, and Schartow v. Schleicher, 35 App.D.C. 347, to the effect that no actual test is required to show utility and thus amount to a reduction to practice. Many well-considered cases which hold to the contrary of Valley's contention in this respect might be cited, but it is sufficient to cite here, Payne v. Hurley, 71 F.2d 208, 21 C.C.P.A., Patents, 1144, 21 U.S.P.Q. 624, wherein the court held that a spark plug was an article of such character that it was necessary not only to test it but also to use it under actual working conditions, and that a shop test, though elaborate and the one used by the trade, was not sufficient. Therefore, we hold that Valley has failed to prove his priority over Ernst by a preponderance of the evidence.

█ We next approach the more serious and important issue involved in this proceeding. Bowers, having conceived the invention in April 1937, is entitled to priority over Ernst if his activities, as testified to by himself and his other witnesses, amounted to a reduction to practice of the invention of the counts.

Bowers, unlike Valley, does not contend that a piston ring is of that character of article which requires no testing to constitute a reduction to practice; but he urges that he has proved that by sufficient tests in 1937 he had demonstrated the practical utility of the device and therefore had completely reduced it to practice three years before his filing date. There is no contention here by Bowers that, if he did not reduce to practice by the construction of one or more rings and the testing thereof, he has shown such diligence up to his filing date as to make his early conception of any value in this proceeding. In other words, as we see it, and it is not seriously contended otherwise, if what Bowers and those working for and with him did amounted to a reduction to practice, he is entitled to priority in this proceeding. On the other hand, if his tests were insufficient in law to amount to a reduction to practice, the finding of the board in favor of Ernst must be affirmed.

The board has discussed the evidence relating to this phase of the case in considerable detail; and we think it would not be helpful to repeat here the numerous incidents which, Bowers claims, show that he had, by proper testing, reduced the invention to practice. The board, as before stated, awarded Bowers a conception date as of April 1937 based upon the construction of a ring assembly, Exhibit 10–A, which we think clearly meets the terms of the counts.

The record shows that Bowers was the president of the Power Research Corporation, which was engaged in the making and testing of piston rings, and that in trying to solve the difficulty of oil leaks around piston rings, he caused to be constructed Exhibit 10–A. In that exhibit the principal ring, into which the groove was cut for the purpose of holding the scavenger ring, is a so-called Flexion ring. It is made from a thin strip of metal reversely folded on itself in accordion fashion. It is thus stretchable and flexes and will press against the side walls of the cylinder, scraping the oil off the cylinder and permitting it to run back into the crankcase, thereby keeping the oil from passing beyond the rings to the top of the cylinder. The record indicates that the so-called scavenger ring was inserted with a view toward controlling the oil. It is not suggested by any of the exhibits or records of the tests made that Bowers was striving to construct a device in such a way that the motion of the scavenger ring would break up and cause to be removed the

carbon formed thereon, but they indicate that he was concerned with solving the problem of leaky rings.

There is no claim that Bowers ever tested the ring in an internal combustion engine. However, it is shown that certain tests were made in 1937 with Exhibit 10–A on the piston of a pump (high-pressure air compressor); that one test was run for 17 hours; and that other tests were made to ascertain the efficiency of the ring. The pump upon which it was tested was one of several used by Bowers' company in testing various kinds of rings, and the testimony shows that the action of the ring in the pump cylinder is very similar to that in an internal combustion engine. Of course, no explosion took place in the pump cylinder, but heat developed and, to some extent, carbon conditions similar to those in an internal combustion engine might have developed.

The testimony of Bowers and his witnesses, however, is very fragmentary and unsatisfactory in showing exactly what were the results obtained. Some of the witnesses stated that the results were good. Just what the results were is not, in respects with which we are here concerned, made clear. Bowers' witness Bird said that after the tests there was a certain amount of carbon but "none at any points which would interfere with the functioning of" the ring. He further stated that they always examined the ring for carbon formation; but there is not a word of testimony in the record to indicate that at that time Bowers ascertained from the said tests that the scavenger ring, by its motion, broke up the carbon and caused it to leave the ring assembly.

Assuming, without deciding, that proper testing of a piston ring in a pump device such as Bowers used would disclose definitely that the ring satisfactorily served all the useful purposes of the invention defined in the involved counts, we think that under the circumstances of this case, it must be held that such a proper test was not made. The record shows that in one of the tests where the Flexion ring was used without the embedded scavenger ring, there were five drops of oil on the head of the piston after a run of about three hours, and that when the scavenger ring was used, there were but three drops of oil after a seventeen-hour run. These facts would hardly show that the tests indicated such utility of the device as to amount to a reduction to practice of the invention involved here.

The most significant piece of evidence in the Bowers record, however, which was heavily relied upon by the board and stressed here at great length by both Ernst and Valley, is Exhibit 6–A (a notebook record of tests, including those made with the ring, Exhibit 10–A). There the following entry was made with reference to Exhibit 10–A: "This set-up *may have merit* as a slapper scraper alternately sealing upper and lower flexion lips * * *." (Italics ours.)

This would indicate that when the test was completed, the parties were not satisfied with the working of the ring, and that it *might* have merit as a slapper or scraper; but this entry must be looked upon at least as evidence of a doubtful attitude as to whether or not there was any merit in the device. Tests should be "such as to establish utility beyond *probability* of failure." Taylor v. Swingle, 136 F.2d 914, 917, 30 C.C.P.A., Patents, 1219, 58 U.S.P.Q. 468. More particularly, the entry indicates that there was at least a doubt in the mind of the one who made the entry as to whether or not the ring would operate to accomplish satisfactorily the chief purposes which it was to serve. As was pointed out by the board, the testimony of Bowers' corroborating witnesses is too indefinite and uncertain on the important question as to the success of the tests to be accepted here as amounting to a reduction to practice.

After these tests had ended, nothing more was done by Bowers for about three years. In the interval between the tests and the time of filing the instant application, he had filed as many as forty patent applications and was granted at least ten patents. When he filed the instant application, he did not use as a basis for it, the structure of Exhibit 10–A. While this latter fact, standing alone, would not be of very great significance, it, when taken together with the other circumstances recited, lends support to the conclusion of the board that the 1937 tests amounted to nothing more than an abandoned experiment. It is true, of course, that once an inventor has completely reduced his invention to practice, he is not required in this kind of case to show subsequent diligence in getting into the Patent Office. His subsequent conduct may be important in determining the ap-

plicability of the rule of Mason v. Hepburn, supra, but that rule has no application here. This and other courts have many times said, however, that when there is a doubt as to whether there has been an actual reduction to practice, the subsequent conduct of the inventor may disclose that, instead of a reduction to practice, the acts relied upon show that what was done amounted to nothing more than an abandoned experiment. Bennett v. Fitzgerald, 48 F.2d 917, 18 C.C.P.A., Patents, 1201, 9 U.S.P.Q. 211; Stewart v. Robinson, 55 F.2d 998, 19 C.C.P.A., Patents, 953, 12 U.S.P.Q. 218; Collins v. Olsen, 102 F.2d 828, 26 C.C.P.A., Patents, 1017, 41 U.S.P.Q. 220.

It seems clear to us that Bowers has not proved a reduction to practice prior to his filing date. By so holding, we do not wish to be understood as implying that to constitute a reduction to practice of an oil-control piston ring it must be tested in an internal combustion engine. It may be that shop tests of such a ring to be used in an internal combustion engine may be sufficient to meet the requirements of law if they demonstrate the practical utility of the device for the purposes intended. What we do hold here is that Bowers' tests, under all the circumstances stated, must be regarded as insufficient. Clearly, Bowers' tests are not satisfactory with respect to the carbon removing capabilities of Exhibit 10-A, irrespective of what might be concluded as to what the tests disclosed with reference to other features of the ring. Bowers, in his application, states: "A principal object of the invention is to improve oil control piston rings *and to prevent deposit of carbon on such rings,* with a view to maintaining oil passages of the ring open and thereby effecting savings in oil consumption and increasing the life and efficiency of combustion motors. * * *." (Italics ours.)

The results as were testified to by one or more of the witnesses might be good so far as scraping the oil from the side walls of the cylinder is concerned, but that does not meet the requirements here. Other defects might have existed. The invention here, as is apparent from all three applications, is directed to the breaking up and dispersion of carbon formation on the ring. Of course, to successfully accomplish this purpose, one would obviously want to use a ring which would not leak oil. If the inventor satisfactorily ascertains that it will not leak oil, this alone does not suffice for a showing that it will take care of the carbon problem. The utility of Bowers' ring, Exhibit 10-A, was not sufficiently shown to amount to a reduction to practice of the invention with which all three of the parties here were concerned.

In support of his contention that shop tests are sufficient, Bowers has cited a number of authorities, among them, Goodale v. Lund, 96 F.2d 840, 25 C.C.P.A., Patents, 1148, 37 U.S.P.Q. 696. In that case it was held that certain shop tests of air valves were sufficient. Attention was called to the fact that the tests to which the valves were subjected were those generally resorted to by the inventor's company in its efforts to ascertain the commercial value and practical utility of valves for steam heating systems. Bowers, in relying upon that holding, stresses the fact that Exhibit 10-A was tested by his company in the manner in which it tested all its piston rings in order to determine their utility. But regardless of whether under certain circumstances an oil-control ring might be sufficiently tested on an air compressor in a shop to meet the requirements of law, the record in the instant case, as we have pointed out, does not show that the tests made by Bowers demonstrated the utility of Exhibit 10-A sufficiently to meet those requirements.

It follows from the foregoing, therefore, that the board correctly held that neither Bowers nor Valley met the burden of proving priority over the party Ernst by a preponderance of evidence. Its decision awarding priority to Ernst of the invention of the two counts involved is accordingly affirmed.

Affirmed.