29 C.C.P.A. (Patents)

## TRIPLETT v. STEINMAYER.

### Patent Appeal No. 4621.

Court of Customs and Patent Appeals.

July 6, 1942.

Brown, Jackson, Boettcher & Dienner, of Chicago, Ill. (John A. Dienner and Robert R. Lockwood, both of Chicago, Ill., of counsel), for appellant.

Charles W. Hills, Jr., Carlton Hill, Charles F. Meroni, and Chester W. Brown, all of Chicago, Ill., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an interference proceeding wherein appeal has been taken by appellant from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner of Interferences awarding to appellee priority of the invention defined in counts numbered 8 and 9 of the interference.

Other counts were involved in the decision appealed from, but they are not included in the appeal before us.

The counts here involved read as follows:

"8. A fuse device of the air expulsion type comprising, in combination, a fuse link housing, a replaceable fuse link in said housing including a fusible element *surrounded by a filling of inorganic arc extinguishing material,* and spring means in said housing tensioning said fuse link, *the combined action of said filling of arc extinguishing material and said spring effecting rapid interruption of relatively small fault currents."* (Italics ours.)

"9. A fuse device comprising, in combination, a tubular fuse housing closed at one end and open at the other and having external terminals adjacent its ends, a conductor within said housing for interconnecting said terminals including a terminal portion connected to the external terminal at the closed end of said housing and a flexible lead portion extending out of the open end of said housing and connected to the external terminal thereat, a spring within said housing biasing said terminal and flexible lead portions apart, fusible means interconnecting said terminal and flexible lead portions, an insulating sleeve surrounding said fusible means, and *a filling of solid arc extinguishing material within said insulating sleeve and embedding said fusible means."* (Italics ours.)

The interference is between an application of appellant filed June 28, 1937, and an application of appellee filed November 16, 1934. Appellant being the junior party, the burden was upon him to establish priority of invention by a preponderance of evidence.

The involved invention is concisely described in appellant's brief as follows: "The invention here involved is a fuse device comprising a fuse link housing or tubular fuse housing having within it a replaceable fuse link that is provided with a fusible element surrounded by a filling of inorganic arc extinguishing material or solid arc extinguishing material together with spring means in the housing for tensioning the fuse link. Except for the filling of inorganic or solid arc extinguishing material around the fusible element, the construction called for by the appealed claims was old and well known, as evidenced by Ramsey patent 2,091,452 (Rec. pp. 43 through 58) application for which was filled August 28, 1931. This general combination of a fuse tube and replaceable fuse link was old and well known at the time that Triplett entered the field. His contribution was in the addition to this prior art fuse device of an old and well known arc extinguishing material thereby making a new combination of old elements the func-

tioning of each of which was known and appreciated by those skilled in this art. In other words, the invention here involved does not constitute a radical departure from the prior art but rather it is a short step forward in a fairly well advanced and crowded field in which many others were working at the same time."

The italicised portions of the above-quoted counts indicate the elements which, in combination with the other elements named in said counts, constitute the involved invention.

Both parties submitted evidence in the form of stipulated testimony and certain exhibits.

The Examiner of Interferences held that appellant was entitled to a date for conception of the invention at least as early as June 9, 1933, but that he had failed to establish its actual reduction to practice, and had not established diligence from the time that appellee entered the field to appellant's constructive reduction to practice on June 28, 1937, the filing date of appellant's application. The Examiner of Interferences also found that appellee had not established conception of the invention or its reduction to practice prior to the filing date of his application, November 16, 1934.

Appellee being the first to file his application, the Examiner of Interferences awarded him priority of invention with respect to both counts. Upon appeal by appellant, the Board of Appeals affirmed the decision of the Examiner of Interferences.

But one question is presented to us by this appeal, viz., whether certain tests of the involved device on June 15, 1933, establish reduction to practice of the invention by appellant. It is conceded that appellant was the first to conceive the invention, and appellant makes no claim to diligence in reducing the invention to practice if it was not reduced to practice on June 15, 1933.

It is established that fuse devices embodying all of the elements of the counts were tested on said June 15, 1933, at a substation of the Commonwealth Edison Company at Chicago, Illinois.

In the stipulated testimony of Sigurd I. Lindell it is stated: "11. That on June 15, 1933, he personally assisted in testing fuse links constructed according to Triplett-Ramsey-Lindell Exhibit 18 at the Whipple Street Substation of the Commonwealth Edison Company at Chicago, Illinois, and

that on June 15, 1933, he personally recorded the test data appearing on Triplett-Ramsey-Lindell Exhibit 20. That for these tests fuse links constructed according to Triplett-Ramsey-Lindell Exhibit 18 were placed in a cutout constructed as shown in Triplett-Ramsey-Lindell Exhibit 19 in lieu of the fuse link there shown. That tests 4–D, 5–D and 7–D indicate that fuse links according to Triplett-Ramsey-Lindell Exhibit 18 were tested using No. 6 powder or calcium carbonate. That tests 6–D and 8–D indicate that fuse links according to Triplett-Ramsey-Lindell Exhibit 18 were tested using No. 8 powder or lithium carbonate. That the tests were carried out by subjecting the fuse links to overcurrents at a circuit voltage of 2300 volts. That in each of said tests, except test 6–D, the cutout satisfactorily cleared the circuit."

In the stipulated testimony of appellant it is stated: "7. That several fuse links according to Triplett-Ramsey-Lindell Exhibit 18 were made prior to June 15, 1933, some with No. 6 powder, calcium carbonate, and others with No. 8 powder, lithium carbonate, and that on June 15, 1933 several of these fuse links were tested at the Whipple Street Substation of the Commonwealth Edison Company at Chicago, Illinois, as shown by the test report sheet, Triplett-Ramsey-Lindell Exhibit 20, which was prepared by Sigurd I. Lindell on June 15, 1933. That he was present at said Whipple Street Substation and witnessed the tests on June 15, 1933, as reported in Triplett-Ramsey-Lindell Exhibit 20 and that the fuse links according to Triplett-Ramsey-Lindell Exhibit 18 were tested by subjecting them to overcurrent at 2300 volts in a cutout constructed according to Triplett-Ramsey-Lindell Exhibit 19 with the fuse link of Triplett-Ramsey-Lindell Exhibit 18 assembled therein in lieu of the fuse link there shown, tests 4–D through 8–D, Triplett-Ramsey-Lindell Exhibit 20, comprising the tests just mentioned and that in each test, except test 6–D, the fuse satisfactorily opened the circuit. That for tests 4–D, 5–D and 7–D, No. 6 powder was used. That for tests 6–D and 8–D, No. 8 powder was used."

Exhibits 18 and 19 disclose the elements of the involved invention, and Exhibit 20 purports to disclose the results of twelve tests of fuse devices, said tests being numbered from 1–D to 12–D.

Appellant's brief states: "Tests 1–D, 2–D and 3–D were made with a fuse link which Triplett and Lindell described as being of

a standard type which constituted the fuse link construction shown on Triplett et al. Exhibit 18 (Rec. p. 105), without the pockets containing the filling of arc extinguishing material or powder. * * *"

We find nothing in the testimony of Triplett or Lindell with respect to tests 1–D, 2–D, and 3–D, nor do we find anything in Exhibit 20 to indicate that the device employed in said tests 1–D, 2–D, and 3–D contained a spring in the housing tensioning the fuse link. In Exhibit 20, with respect to these three tests, under the column headed "Fuse Element," are the abbreviations "Std," presumable meaning "Standard," but we are not advised from the testimony as to what a standard fuse element is.

Whether the fuse elements employed in tests 1–D, 2–D, and 3–D were of the construction shown by Exhibit 18 without the pockets containing the filling of arc extinguishing material or powder is purely a matter of speculation, there being no testimony with respect thereto.

With reference to the data in Exhibit 20 respecting tests numbered 9–D to 12–D, inclusive, there is no testimony explaining them or even specifically referring to them, and therefore they cannot be considered by us.

This leaves for consideration the testimony and the data contained in Exhibit 20 relative to tests numbered 4–D to 8–D, inclusive. With respect to these tests, the devices tested concededly respond to the elements of the counts. The Examiner of Interferences in his decision, after describing the devices tested, stated:

"The tests on June 15, 1933, of such assembly, according to Steinmayer were not a reduction to practice thereof because they failed to demonstrate that the filling of No. 6 or No. 8 powder calcium carbonate and lithium carbonate, respectively, functioned as an inorganic arc extinguishing medium. It is true that the test data exhibit 20, do not on their face show that these powders extinguished the arc when the fuse blew.

"Neither Triplett nor Lindell offer any explanation of the data of exhibit 20, nor do they furnish more than a very general description of the tests for which exhibit 20 purportedly records the data. It is not possible to determine with any degree of certainty from inspection of exhibit 20 whether or not tests 4–8 demonstrated that

the fuse link and assembly were satisfactory, and any holding on this evidence would be purely speculative. Triplett's proofs as to tests are not materially better than those offered by his opponent, and which are discussed above.

"Since Triplett is the junior party it is incumbent upon him to show by clear and convincing evidence that his early experimental work demonstrated that the devices were satisfactory. This he has not done. His own opinion, as well as that of Lindell, can not be accepted in lieu of evidence sufficient to enable the examiner of interferences to reach an independent conclusion as to the success or failure of these tests. So far as the record shows no further work was ever done with fuse links like exhibit 18, and under the circumstances it must be held that the June 15, 1933 tests at best were no more than abandoned experiments."

The Board of Appeals in its decision stated: "The main and only ground of this appeal is that the examiner was in error in not holding that the tests carried out by the party Triplett amounted to a reduction to practice. It appears from the record that a fuse made in accordance with the Triplett Exhibit 18 and covered by counts 8 and 9 was tested on June 15, 1933 at a power house. In this form of switch, the fusable portion of the fuse was encased in a pellet of powdered calcium carbonate or lithium carbonate. This powder was intended to act as an inorganic arc extinguishing medium. It appears that only one test was carried out and in this test the one numbered 6 using lithium carbonate as the arc extinguishing medium was a failure. The Examiner of Interferences has held that there is nothing in the testimony of either Triplett or Lindell that the powder used actually functioned as an arc extinguishing medium. Only a very general description of the tests was covered by their testimony. We are of the opinion that the examiner was fully justified in holding that this test did not show a reduction to practice. Apparently no further work was ever done with fuse links of the type shown in Exhibit 18 and therefore the assumption that the tests were no more than abandoned experiments seems to be fully justified. * * *"

Both the Examiner of Interferences and the Board of Appeals expressed the opinion that, in order to constitute a reduction to practice of the invention, the device should

be successfully tested under normal working conditions, and that a test of the device carried out in a laboratory or power house is not a test under normal working conditions.

For the purposes of our decision herein, we may assume that the tests in the substation of the Commonwealth Edison Company would have constituted a reduction to practice of the invention if it had been established that the elements constituting the involved invention successfully functioned in such tests.

We may accept the testimony of appellant and Lindell that the fuse devices in the tests 4–D, 5–D, 7–D and 8–D operated to "satisfactorily open the circuit," as testified by appellant, and that "in each of said tests, except test 6–D, the cutout satisfactorily cleared the circuit," as testified by Lindell.

But, regardless of these general expressions of opinion, there is nothing in the testimony to show that the successful operation of the fuse device was due to the invention here involved, or that the invention contributed in any way to the successful operation of the device.

Appellant's application refers to a copending application of Allan Ramsey, No. 559,846, which, the application of appellant states, was assigned to the assignee of the instant application. Appellant's application further states, referring to the Ramsey application, as follows:

"Different types of replaceable fuse links are illustrated in this application. Generally these links comprise a terminal that is arranged to be connected to a movable terminal inside of the fuse tube to which is attached a coil tension spring that serves to bias the movable terminal toward the normally closed end of the fuse tube. * * *

\* \* \* \* \*

"The object of the present invention, generally stated, is to provide an improved form of replaceable fuse link over that shown in the copending application of Ramsey which will be efficient in operation and which can be readily and economically manufactured and installed."

A patent, No. 2,091,452, was issued upon the Ramsey application on August 31, 1937. In this patent we find the following, the asterisks denoting reference numerals omitted in quoting: "The fuse link is made of suitable fusible material as, for example, pure silver wire and it has a portion * * * of reduced cross-sectional area at a point along its length within the tube * * *, said reduced portion * * * being surrounded by a cork * * * disposed within the lower end of the tube * * *. When the fuse link blows it blows at the reduced portion * * * and the tension of the spring * * * being thereby released, this spring will quickly snap the terminal * * * upwardly and away from the point of blowing of the fuse *to draw out quickly and extinguish any arc that may form."* (Italics ours.)

Inasmuch as appellant concedes that the element of the counts distinguishing the invention here involved from the invention disclosed in the Ramsey patent is the addition to the Ramsey combination of a filling of inorganic arc extinguishing material, it was incumbent upon appellant to show that in the tests referred to in the testimony the inorganic arc extinguishing material contributed to the successful operation of the device tested.

The Ramsey patent states, as above quoted, that through the operation of the spring disclosed by him the terminal will quickly snap upwards and away from the point of blowing of the fuse "to draw out quickly and extinguish any arc that may form."

Count 8 expressly requires the combined action of the spring and the arc extinguishing material to effect rapid interruption of relatively small fault currents.

For aught that appears in the testimony on behalf of appellant, the successful operation of the device testified to by appellant and his witness Lindell may have been due wholly to the operation of the spring, as set forth in the Ramsey patent, for there is no testimony that the arc extinguishing material had anything to do with the successful operation of the device.

Considering Exhibit 20 apart from the testimony of appellant and Lindell, it is not possible to determine with any degree of certainty from inspection of this exhibit that any of the tests 4–D to 8–D, inclusive, demonstrated that the fuse link assembly was satisfactory, or that the inorganic arc extinguishing material performed any function in such tests. We are in agreement with the statement of the Examiner of Interferences that any holding upon this evidence would be purely speculation.

The burden was upon appellant to establish actual reduction to practice by a preponderance of evidence, and we are in agreement with the holdings of the Patent Office tribunals that the evidence produced by him does not establish this.

Although appellant was the first to conceive the invention, it is established that he was not diligent in reducing it to practice from the time appellee entered the field.

Appellant relies upon a patent to Hope, No. 2,018,556, issued on October 22, 1935, to show that calcium carbonate is an old and well-known arc extinguishing material. His brief states that this patent was cited as a reference to appellant's application. The record does not disclose such citation, nor does it show that the patent was offered in evidence or referred to at any time in this proceeding.

However, assuming that powders such as are disclosed by appellant were known to have arc extinguishing properties, that fact did not relieve appellant from establishing that such powders successfully functioned as a part of his device in the test referred to.

Being in agreement with the Board of Appeals that priority of invention was properly awarded to appellee, its decision is affirmed.

Affirmed.