33 C.C.P.A.(Patents)

## APPLEGARTH v. WILSON.

### Patent Appeal No. 5136.

Court of Customs and Patent Appeals.

July 9, 1946.

Howson & Howson, of Philadelphia, Pa. (Dexter N. Shaw and Fordyce A. Bothwell, both of Philadelphia, Pa., and William A. Smith, Jr., of Washington, D. C., of counsel), for appellant.

Harry C. Page, of New York City (F. W. Crotty, and P. E. Henninger, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal by Applegarth, the junior party, from an award of priority of invention to Wilson in a decision of the Board of Interference Examiners of the United States Patent Office. The award included all the counts in issue and was made on the ground that appellant's proofs failed to establish actual reduction to practice prior to Wilson's filing date or that appellant was exercising reasonable diligence during the critical period.

The interference involves appellant's application, Serial No. 452,252, filed July 24, 1942, and appellee's application, Serial No. 262,146, filed March 16, 1939. Appellant took testimony and appellee relied upon the filing date of his application for conception and constructive reduction to practice.

The subject matter of the five counts here involved pertains generally to electrical systems and, as described in appellant's specification, "is particularly adapted for use in a television system, for example in deflecting circuits thereof, and in various types of frequency dividers synchronized by periodically recurrent pulse signals."

Count 4 is illustrative—

"4. In an electrical system employing time-spaced pulse signals, means actuated by desired pulses but subject to actuation by undesired pulses, a resonant circuit energized by pulse signal energy to produce a sinusoidal voltage wave having a predetermined frequency relation to the frequency of occurrence of said desired pulses, and means for utilizing said voltage wave to decrease the responsiveness of said first means to the undesired pulses."

Appellant explains in his brief that

"The invention in issue, as defined in the five counts * * * relates to stabilizing means (a resonant stabilizing circuit) for certain types of electrical devices. Applegarth's work, in connection with the invention, involved the application of the stabilizing means to blocking tube oscilators employed as frequency dividers in two portable units constructed by him for use in television, the units being nicknamed by the engineers, the 'bread-board' and 'metal-chassis' generators. * * *

"Applegarth's purpose in constructing the 'bread-board' and 'metal-chassis' devices was to provide a portable unit by which the R.M.A. standard signal could be generated or produced. Since the two devices are substantially the same, specific reference to the 'bread-board' device will suffice."

The issue here involved is summarized in the following statement by the Board of Interference Examiners:

"The evidence clearly establishes that Applegarth built a first experimental 'bread-board' device as shown in the circuit diagrams Applegarth Exhibits 2 and 3, and a second 'metal-chassis' device as shown in the circuit diagram Applegarth Exhibit 9, each of which was successfully operated as a frequency divider prior to Wilson's filing date. This conclusion is not seriously denied by Wilson; however, it is strenuously urged that the records fails to establish that if improved stability of the device was obtained, it was the result of the resonant stabilizing circuit, which is the essence of the invention involved herein."

Appellant takes the position that he was first to conceive and successfully operate and use the invention defined by the counts and assigns 21 reasons of appeal in each of which he urges that the board erred in making the award of priority to Wilson. Appellee contends not only that appellant failed to establish reduction to practice but also that "the award of priority in Wilson's favor is supported upon the grounds of abandonment and equitable estoppel."

Appellant is the junior party and has the burden of proving priority of invention by a preponderance of the evidence. Furthermore, to establish reduction to practice appellant must show that his device was subjected to a test under actual working conditions or the equivalent thereof which demonstrated that the device actually performed the function for which is was designed. Chandler v. Mock, 150 F.2d 563, 32 C.C.P.A., Patents, 1183; Lustig v. Legat, 154 F.2d 680, 33 C.C.P.A., Patents, 991.

The invention defined by the counts in issue is embodied in the frequency-dividing chain of the "bread-board" device. There is no question that the "bread-board" operated successfully as a frequency divider. The counts of the interference, however, call for a "bread-board" device which may be operated as a frequency divider to decrease the responsiveness of a sinusoidal voltage wave to the undesired pulses produced in a resonant circuit energized by pulse signal energy.

The conventional blocking tube oscillator, according to the record, was not sufficiently stable in its range of operation to produce accurate and reliable time-spaced pulses at a predetermined rate per second. To stabilize that oscillator, Applegarth used a resonant circuit to produce a sinusoidal wave which, he alleges, increased the range of stable operation and thereby discriminated against the undesired pulses. That is the essence of the invention here in issue.

In applying the test to the "bread-board" device Applegarth used a blocking tube oscillator of a conventional design to the grid circuit of which a resonant circuit was added. The resonant circuit was tested by making a comparison between the effectiveness of the resonant circuit when it was operating as such and when it was oper-

ated by "shorting" out the resonant circuit to render it ineffective. The operation of the oscillator of the resonant circuit was observed by Applegarth by means of an oscilloscope.

In making the comparison of the relative ranges of stable operation of the blocking tube oscillator with and without the resonant circuit, Applegarth measured the performance in each instance by the range of variations of the grid leak resistor. As pointed out in the decision of the board—

"According to Applegarth substantial variation of the grid leak resistance tended to cause the blocking tube oscillator to fire on an undesired pulse, and it was determined that with the resonant circuit included, the grid leak could be varied four or five times as much as it could be varied with the resonant circuit removed, without causing the blocking tube oscillator to fire on an undesired pulse. From this it was concluded that the resonant circuit increased the stability of the device."

It was the position of the board that appellant was obliged to prove that the increased stability of the blocking tube oscillator was the result of using the resonant circuit and to satisfy the requirements of the counts it was not sufficient to show from a theoretical standpoint that any increase in the stability of the blocking tube oscillator which may have been observed could not have resulted from the readjustment of its grid leak resistor.

Appellee contends that the adjustment of the grid leak resistor made by Applegarth at the time the resonant circuit was inserted into or removed from the oscillatory circuit destroyed the value of the comparative performance test for its intended purpose; because in comparing the performances of oscillators with different values of grid leak resistor, a comparison was made of dissimilar oscillators having different natural operating frequencies and sensitivities.

In support of his contention appellee takes the position that Applegarth in the conduct of his test made the mistake of overlooking the change in the stability of the blocking tube oscillator resulting from a variation of the grid resistor. Appellee assembled facts submitted by Applegarth and analyzed them for the purpose of proving that the increased value of the grid resistor applied by Applegarth each time he inserted the resonant circuit into the grid return of the blocking tube oscillator actually increased the stability of the oscillator.

Appellee's analysis, which was accepted by the board, was challenged in a petition for reconsideration of the board's original decision. With that petition Applegarth submitted a counter analysis to prove not only the fallacy of appellee's reasoning and conclusion but also to show the correctness of Applegarth's original contention. The essential issue presented here has thus twice received painstaking consideration by the Board of Interference Examiners, whose conclusion was summarized in the following excerpts from its original decision:

"From a purely theoretical consideration, it is probable that any increased stability which may have been observed resulted from the use of the resonant circuit rather than from the change of the grid leak resistance. Yet, because of the fact that the operating characteristics of the blocking tube oscillator are inherently changed by any variation of the grid leak resistor, we believe that insufficient test data have been presented to show with the required degree of certainty that the improved result was in fact due to the resonant circuit, rather than due to the increased grid leak resistance.

*     *     *     *     *     *

"As Applegarth has failed to establish an actual reduction to practice before his filing date, he must rely on the filing of his application for constructive reduction to practice. There is no evidence of any activity by Applegarth in reducing the invention to practice between December 15, 1939 and July 1942; thus he was not exercising reasonable diligence during the critical period.

"Priority of invention of the subject matter in issue is hereby awarded to John C. Wilson, the senior party."

Appellant contends that the board's decision in holding that the increased stability

of the blocking tube oscillators may have been due to an increase in the grid leak resistance is erroneous and "completely refuted by the fact that Applegarth was compelled to make the invention in issue because blocking tube oscillators alone inherently have too narrow a range of stable operation."

What the board actually held, however, after discussing certain evidence offered by Applegarth, was—

"Furthermore, it is not clear from the record that increased stability was attained as a result of using the resonant circuit, assuming for purposes of argument, that increased stability was attained. This results from the fact that it was necessary to increase the grid leak resistance of the blocking tube oscillator when the resonant circuit was used to cause the system to continue to divide on the desired pulse."

■ We are not convinced that the findings of fact made by the Board of Interference Examiners is manifestly wrong as disclosed by the evidence submitted herein and for that reason the contention of appellant on the point in question cannot be sustained. Beall v. Ormsby, 154 F.2d 663, 33 C.C.P.A., Patents, 959.

Appellant contends further that the board in its requirement of comparative tests substituted "a purely artificial legalistic standard for the practical standard of operability." The language of the counts here in issue, as hereinbefore noted in count 4, demonstrates the necessity of comparative tests to establish actual reduction to practice of the invention defined by the counts. Therefore, the board's position cannot be overruled.

■ We have examined the facts and cited authorities relative to other points raised here by appellant and find no manifest error in the board's evaluation of the evidence or its decision based thereon. The issue involved is highly technical in character and under the law the decision of the board should not be disturbed unless it is manifestly erroneous. In re Cohen, 133 F.2d 924, 30 C.C.P.A., Patents, 876.

■ We have given the arguments of counsel careful consideration but are unable to hold that the decision of the Board of Interference Examiners is manifestly wrong. Its decision in holding that appellant's proof was insufficient to clearly establish actual reduction to practice of the invention here in issue, that he was not exercising reasonable diligence during the critical period, and awarding priority of invention to Wilson is accordingly affirmed.

Affirmed.