35 C.C.P.A.(Patents)

## HUELSTER v. REITER.
## REITER v. HUELSTER.

### Patent Appeals Nos. 5468, 5470.

Court of Customs and Patent Appeals.
June 1, 1948.

Samuel E. Darby, Jr., and Floyd H. Crews, both of New York City (Darby & Darby, of New York City, of counsel), for Huelster.

J. H. Kilcoyne, of Washington, D. C. (Elmer L. Zwickel, of Chicago, Ill., of counsel), for Reiter.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

Patent Appeal No. 5468.

This is an appeal in an interference proceeding from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter in issue to appellee, Harold J. Reiter, the senior party. The invention in issue is a cap for a snap fastener. It is defined in four counts, of which the following is representative:

"1. A cap for a snap fastener, said cap having an imperforate center portion and an annular marginal portion, and an annular series of prongs cut from the marginal portion and integrally joined to the cap at the juncture of said portions, said prongs being of a length less than the width of the marginal portion thereby providing an unbroken pheripherial [sic] edge on said portion."

The cap to which the invention relates forms a part of the socket member of a snap fastener. The other part of the socket member comprises an annular channel having its outer edge rolled upwardly and inwardly to a position slightly spaced from the inner edge of the channel. The cap is circular in form and includes an imperforate circular center portion surrounded by a flat flange. Portions of this flange are pressed out and bent to form prongs extending at right angles to the plane of the flange and surrounding the imperforate central portion of the cap. In assembling the socket member the prongs are passed between the inner edge and the rolled outer edge of the channel hereinbefore referred to and the prongs are then bent so that they lie along the inner face of the rolled outer edge of the channel and thus clench the cap and the other part of the socket member together.

■ The counts are claims of a patent, No. 2,332,167, issued to appellee Reiter on October 19, 1943. The application of appellant Huelster was filed February 8, 1944, after the issuance of the Reiter patent, and appellant, therefore, has the burden of proving his case beyond a reasonable doubt. It is urged by appellant that this burden should apply to conception only and that as to such matters as reduction to practice and diligence, his burden should be a fair preponderance of evidence only. However, in the case of Heddon v. Cowdery et al., 100 F.2d 426, 26 C.C.P.A., Patents, 743, we stated that an applicant whose case is filed after the issuance of a patent to another has the burden of proving "the essential elements of the case beyond reasonable doubt," and in the cases of Walker v. Altorfer, 111 F.2d 164, 27 C.C.P.A., Patents, 1130, and Lichtenwalter v. Caron, 158 F.2d 1011, 34 C.C.P.A., Patents, 792, we held that this burden applied to the proof of reduction to practice. In view of authorities cited, it must be held that appellant in the instant case had the burden of proving beyond a reasonable doubt conception of the involved invention and also prior reduction to practice, or that he was diligent in reducing the invention to practice during the critical period.

■ Appellee did not submit any testimony and is, therefore, restricted, for conception and reduction to practice, to October 29, 1942, the filing date of the application on which his application here involved was filed.

The Board of Interference Examiners held that appellant conceived the invention defined in counts 1, 2, and 4, and made fasteners conforming to the requirements of those counts prior to the end of 1941. As to count 3, the board held that appellant had failed to establish conception prior to appellee's filing date. The board further held that the invention in issue is of such a nature that an actual reduction to practice of it cannot be affected without a successful test; that no tests were made by appellant prior to his filing date, February 8, 1944; and that appellant was not diligent during the period between October 29, 1942, when appellee entered the field, and February 8, 1944, when appellant filed his involved application. The board, accordingly, awarded priority to appellee as to all four counts,

It is not contended on behalf of appellant that he successfully tested a fastener which conforms to the counts in issue at any time prior to February 8, 1944. Counsel for appellant contend, however, that the invention in issue is of such a nature that merely making it, without testing, is sufficient to establish an actual reduction to practice.

Although the cap here in issue is simple in construction, it is made of comparatively light metal and, in use, may be subjected to rather severe strains in the wearing, laundering, and ironing of the garment to which it is attached. It is true that the devices alleged to have been made by appellant in 1941 and relied on by him as showing a reduction to practice were generally similar to caps previously made. They differed somewhat, however, in proportion and design, and their ability to meet the stresses normally encountered in use could not, in our opinion, be foretold with certainty on the basis of tests of the prior art fasteners. Furthermore, the cap to which the interference counts are directed was not intended merely to duplicate prior fastener caps, but was intended as an improvement, and was held to be invention over the prior art devices.

As pointed out in appellant's application and in appellee's patent, the caps of the prior art had a tendency to be crushed or deflected in such a way as to render the fastener, of which they formed a part, inoperative. It was an important object of each of the parties to avoid those defects. It is clear, in our opinion, that it could not be ascertained from a mere inspection of the new cap whether or not the improved result would be obtained. To determine that question it would be necessary to subject the new cap to the stresses which had produced the crushing of the prior art devices. Only after the new cap had withstood such stresses could its success be considered to be established. Furthermore, it would not be possible to tell from inspection alone whether the prongs of the fastener caps allegedly made in 1941, or the

flanges on which the prongs had been punched, were strong enough to meet the stresses encountered in the use of the fasteners.

Counsel for appellant rely on the case of Sinko Tool & Manufacturing Co. v. Automatic Devices Corporation, 2 Cir., 157 F.2d 974, 977, in which it was stated that a test "under service conditions" is necessary only in those cases in which "persons qualified in the art would require such a test before they were willing to manufacture and sell the invention, as it stands." It is to be noted that that decision relates to the necessity of tests "under service conditions", and not to the necessity of any tests at all. In the Sinko Tool & Manufacturing Co. case, supra, there had been shop tests and demonstrations made. The case, therefore, is not directly in point in a situation where, as in the instant case, no tests whatsoever were made. Furthermore, although appellant and his witness Scovill stated that, in their opinion, the 1941 caps could have been marketed, they did not state definitely that they would have been willing to produce and market them without testing them, nor is there any evidence that they were ever actually produced and marketed without tests. Accordingly, the opinions of Huelster and Scovill, given years after the caps were made, are not considered sufficient to establish that tests were unnecessary.

It may be noted that in the case of Warner v. Smith, 13 App.D.C. 111, 1898 C.D. 517, the court held that the making, without testing, of a button having certain novel features, for use on garments did not constitute a reduction to practice.

We are of opinion that the invention here in issue is of such a nature that a successful test of it is necessary to establish a reduction to practice and that appellant, having failed to prove that such a test was made, was properly restricted to the filing date of his application here involved; namely, February 8, 1944, for reduction to practice. Accordingly, even assuming appellant to have been the first to conceive the invention in issue, he cannot prevail unless he was diligent from a time just prior to October 29, 1942, when appellee filed the application on which his patent here involved was granted, until February 8, 1944, when appellant's application was filed.

It is not alleged that appellant was active in connection with the invention in issue throughout the critical period, but it is contended that appellant and the Scovill Manufacturing Company, his assignee and employer, were busy with war work and that, for that reason and because of a lack of necessary materials, the invention could not be put into production. Assuming, for the purpose of the decision in this case, that the failure by appellant to make an actual reduction to practice of the invention during the war years was justified, the failure to constructively reduce the invention to practice by the filing of an application has not been satisfactorily explained. The record shows that six applications for other inventions by appellant were filed during 1942, one of those being filed on September 10, 1942, shortly before appellee's entry into the field, and another on December 1, 1942, shortly after such entry. It is evident, therefore, that appellant could have filed an application on the invention here in issue at any time during 1942, if he had desired to do so. Furthermore, appellant's application here involved was filed on February 8, 1944, less than four months after the issuance of appellee's patent on October 19, 1943, and appellant admitted that he had knowledge of the patent prior to the filing of his application. It is evident, therefore, that appellant, despite the burden of war work, was able to file his application promptly after learning that a rival was in the field. We are of opinion, therefore, that appellant was lacking in diligence during 1943 and the latter part of 1942, and that the Board of Interference Examiners properly awarded priority of invention to appellee.

In view of our conclusion, it is unnecessary to decide whether appellant established conception of the invention in issue prior to appellee's filing date.

The decision of the Board of Interference Examiners awarding priority of invention of the subject matter in issue to appellee is affirmed.

Affirmed.

Patent Appeal No. 5470.

■ Subsequent to appellant's appeal to this court, appellee filed a cross-appeal claiming that the board erred in awarding to the party Huelster conception of counts 1, 2, and 4, in October 1941. Owing to the views hereinbefore stated in Patent Appeal No. 5468, the issues raised by appellee's cross-appeal are moot. Accordingly, it is unnecessary to decide that issue.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.