**LANDON v. GINZTON et al.**
**Patent Appeal No. 6006.**

United States Court of Customs
and Patent Appeals.
June 24, 1954.

Conder C. Henry, Washington, D. C.
(James L. Whittaker, Princeton, N. J.,

and Milton S. Winters, of counsel), for
appellant.

Thomas M. Ferrill, Jr., for appellees.

Before GARRETT, Chief Judge, and
O'CONNELL, JOHNSON, WORLEY,
and JACKSON (retired), Judges.

O'CONNELL, Judge.

Landon, the junior party, has appealed
here from the decision of the Board of
Interference Examiners of the United
States Patent Office awarding to appel-
lees, Ginzton and Salisbury, the senior
party, priority of the invention defined by
the two counts in issue.

The interference involved appellees'
application No. 102,276, filed June 30,
1949, as a division of their parent appli-
cation No. 474,016 previously filed Jan-
uary 29, 1943, which date stands in the
interference as appellees' date of record
effective for conception and reduction to
practice.

Appellees' parent application matured
into patent No. 2,503,256 and is not re-
produced in the record.

Appellant Landon was involved in the
interference on the basis of his applica-
tion No. 512,149 filed November 29, 1943,
which matured into his patent No. 2,243,-
506, granted July 8, 1947. This patent
embodied claims for "a new and useful
Improvement in Wavemeter for Centi-
meter Waves," and "more particularly to
wavemeters for measuring centimeter
waves in waveguide transmission sys-
tems."

The subject matter of the counts orig-
inated as claims 1 and 2 of Landon's
patent. They were copied and asserted
for purposes of interference as claims
1 and 2 in appellees' divisional applica-
tion hereinbefore described. Count 1
is representative and reads as follows:

"1. A microwave wavemeter for
a waveguide transmission system in-
cluding a cavity resonator com-
prising two hollow conductive ele-
ments disposed in adjustable tele-
scopic relation, means for introduc-
ing microwave energy from said
waveguide into said resonator,

means for adjusting said telescopic relation of said elements to establish standing microwaves in said resonator in response to said microwave energy, means including a concentric line loosely coupled to said resonator to induce in said line signal currents in response to said standing waves, a detector connected in said line to rectify said signal currents to provide signal demodulation currents, and indicator means coupled to said line and responsive to said demodulation currents for indicating resonance of said cavity resonator to said microwave energy."

▇ The real parties in interest are the Radio Corporation of America, assignee of appellant, and the Gyroscope Corporation, appellees' assignee. Both parties took testimony, filed briefs, and appeared at the final hearing. The junior party was under the burden of proving priority through actual reduction to practice by a preponderance of the evidence, Pines v. McAllister, 188 F.2d 388, 38 C.C.P.A., Patents, 981, 983. On that point the board held appellant had not met his burden of proof.

The question here is whether certain described uses and tests which were made of and with appellant's device prior to appellees' date of record constituted an actual reduction to practice of the invention defined by the counts. That device was generally described by the board as "a wavemeter of the type employing a resonant cavity which is tunable by a relative movement of interfitting parts to adjust the physical dimensions of the cavity. Means is provided to electrically couple the interior of the cavity to a waveguide which may be carrying electric wave energy, and another means is provided to couple the interior of the cavity to a sensitive detector and indicator. The movable parts which determine the physical demensions of the cavity are provided with a graduated scale, or scales, and an index. For use, the device is compared with a primary frequency standard through the range of the scale to be used, and a graph or chart showing correspondence between the reading of the index and frequency is prepared."

The board cited the patent to Southworth No. 2,106,771 from Landon's file history for a disclosure that the use of an adjustable cylinder resonant cavity as a wavemeter was prior art of record. Southworth's invention "relates to the transmission of ultra-high frequency electromagnetic waves and more especially, but not exclusively, to methods and apparatus for the generation and utilization of high frequency electromagnetic waves in dielectric guides."

Referring to the subject matter of the counts, to the drawings accompanying the patent to Southworth, and to the invention defined in his specification, appellees make these pertinent and emphasized statements which are supported by the disclosures of record:

"A generally similar prior cavity wavemeter [to that of Landon] had been provided with a *disc piston* with friction contact arrangements in the high-current region directly at its periphery. * * * The improvement over said prior microwave cavity wavemeter as defined in counts 1 and 2 related to special resonator configurations with *hollow pistons* for avoidance of direct friction contact in the high-current regions. This is the sole distinction of count 1 over Southworth. Count 2 further specifies the feature of the mating threads of the piston and outer body of the wavemeter, through which the micrometer-type adjustment action and vernier scale features are obtainable, for minute adjustments and precise readings of piston position. These improved wavemeters were to provide very high Q (for sharp, highpeaked tuning response) and reliable repeatability of their positions of resonance, with freedom from the erratic performance which results if there are spurious modes of response.

\*   \*   \*   \*   \*   \*

"* * * Count 1 of this interference reads squarely on said Southworth wavemeter, element for element, except for the lack of *the recited hollowness of the piston,* Southworth's piston 2 being a *disc* arranged for friction contact directly at the periphery of the disc face. The recited feature of Count 1 that *both the cylinder and the piston be hollow*—the sole distinction over Southworth—is the feature that relates the count back to the recitation of features in the Landon specification * * *. Note also the recitations of objects relating to Q and to freedom from undesired mode responses * * *. The stated objectives of Ginzton et al. are to like general effect."

The board also described the chief differences between appellees' device and that disclosed by appellant and, among other things, pointed out that in the combination defined by the specifications of the respective parties, the modes of connecting the waveguide and the detector to the resonating cavity are different in detail but perform the same function.

Appellant concurs in the following finding made by the board and relies thereon as the basic ground for the reversal of the involved decision:

"The applicant Landon was, at the time of the alleged inventive acts referred to in the testimony, employed by Radio Corporation of America in its research laboratory. He was working with several other engineers, two of whom testified as corroborating witnesses. There is no question but that there was produced by this group a piece of apparatus which substantially corresponded to that shown in the drawing of the Landon application at a date not long prior to September 7, 1942, and that this piece of apparatus was used principally by the witnesses Kihn and Keizer during an investigation having for its purpose the design of a 'mixer' and a signal generator to operate on 3 centimeter waves."

Appellant insists that the foregoing excerpt from the decision of the board embodies an unalterable finding of fact that the invention defined by the counts had been exclusively used by appellant as a physical object or apparatus in the practical measurement of the 3-centimeter microwaves in accordance with the object for which such device was designed; and that appellant's wavemeter was thus reduced to practice under actual working conditions, in the successful performance of a government contract, at least as early as September 7, 1942, which date was earlier by four months than January 23, 1943, the date claimed by appellees for conception and reduction to practice.

Appellant's counsel referring to the findings of the board hereinbefore described vigorously urge:

"Inasmuch as we concur in this finding, detailed discussion of the evidence supporting it appears uncalled for.

"Such findings coupled with a showing that the counts read literally on the patent drawing—which point is amply proven and is not in question—should conclude the case. * * *

* * * * * *

"The counts of the interference do not include all of the structure illustrated by the appellant's patent drawing. It was the illustrated structure which the Board admitted had been used in service. * * * Reliance is had on this device for reduction to practice, on which the counts undeniably read. The appellant, therefore, proved more than was necessary to establish his case."

The difficulty with appellant's position is that the holding upon which he places his sole reliance was not the final and effective rejection by the board, namely:

"* * * It is insufficient, according to our view of the law, that a wavemeter was constructed which contains the features recited by the counts, and was expediently used, where * * * the qualities relied

upon to import invention were not particularly required for that use, and the manner of use was not such as to reveal and demonstrate those qualities. If the invention was present at the time it was hidden; it requires conscious recognition by actual observation to complete the actual inventive act."

The board in the course of its decision had also previously expressed various observations which it regarded, collectively, as having a controlling influence with respect to the ultimate issue in the case at bar. For example:

"The patent application may reveal a number of purposes for the same invention. The inventor need prove only one practical use; only one useful result or effect. But the applicant who must establish priority [by actual reduction to practice] over another who is otherwise entitled to the patent on the invention must jump that hurdle cleanly. * *

\* \* \* \* \* \*

"It is elemental that an invention must be shown to be of practical utility for its intended purpose, and *unless the device and its use be very simple or obvious*, it is necessary that the practibility be demonstrated by actually building and testing the device embodying the invention under the conditions it would be expected to encounter in such use. The testing of a device asserted to embody the invention but with no actual test of the features upon which the invention depends, does not constitute a reduction to practice. * * It appears, therefore, that the rule requires not merely that a device which embodies a combination, substantially found to be patentable, has utility for some purpose, but that the inventive combination itself is shown to function according to its intended purpose. In other words, it must be apparent from the test that the invention is functioning as such and is not merely a superfluity carried along by another operating combina-

tion in which it is embedded." (Italics supplied.)

The board in support of its position cited, among other authorities, the doctrine expressed in the case of Coffin v. Ogden, 18 Wall. 120, 124, 85 U.S. 120, 124, 21 L.Ed. 821. That case was a suit for infringement on a door lock and involved by way of defense, among other things, the question of priority by reason of actual reduction to practice. The board and the appellant have both relied upon the case to support their conflicting conclusions of law. The board held in accordance with its rules of construction hereinbefore described that appellant had not met the burden of proving prior reduction to practice, namely:

"The statements in the report of Landon and others, Landon Exhibit 2, sheet 5, cannot be accepted in lieu of actual observations as establishing that the wavemeter referred to had high Q and freedom from undesired modes of oscillation. Under the circumstances, the statements in the report appear to contain, or might contain considerable engineering conjecture. The courts have ruled, over and over again, from Coffin v. Ogden, supra, to Pines v. McAllister, supra, that in the reduction to practice of an invention certainty is required rather than conjecture; even though the conjecture may have some plausible scientific basis to rest upon."

The reasoning whereby the Board of Interference Examiners made its findings of fact and derived its conclusions of law in the case at bar is definitely supported by the recent decisions of this court in the cases of Triplett v. Steinmayer, 129 F.2d 869, 29 C.C.P.A., Patents, 1243; and Applegarth v. Wilson, 156 F.2d 373, 33 C.C.P.A., Patents, 1268. On that point, appellees properly observe in their brief:

"Just as in the case of Triplett v. Steinmayer, supra, this Court held in Applegarth v. Wilson [156 F.2d 373], 33 C.C.P.A. (Patents) 1268, 70

U.S.P.Q. 449 that the conceded proof of successful operability of the entire system including an alleged improvement did not of itself prove the beneficial effect of the improvement feature. In Applegarth v. Wilson, the desired effect of the added feature was itself recited in the illustrative count, whereas in Triplett v. Steinmayer, in Count 9, the filing of the 'arc extinguishing material' was specified in the count without any further recitation as to any functions or effects to be accomplished thereby."

 The law is also clear on the point that it is proper for the board in an interference not only to take into consideration all of the elements recited in the counts but also the statements in the specification which shed light upon the purpose and intentions as to the structures defined by the counts. Bowers v. Valley and Ernest, 149 F.2d 284, 32 C.C.P.A., Patents, 1039, 1046; Huelster v. Reiter, 168 F.2d 542, 35 C.C.P.A., Patents 1212, 1215; Balogh v. Crot, 176 F.2d 923, 37 C.C.P.A., Patents, 707. Moreover, the propriety of taking into consideration the disclosure of the patent to Southworth in this case is directly sanctioned by the final provision of Rule 258 of the Rules of Practice of the United States Patent Office, 35 U.S.C.A.Appendix:

"At final hearing between an application and a patent the prior art of record in the patent file may be referred to for the purpose of construing the issue."

We agree with the conclusion of the Board of Interference Examiners that appellant failed to meet the requirements for proof of reduction to practice of an improvement feature such as the hollow piston arrangement for avoidance of high-current friction contacts.

In view of that conclusion, it is deemed unnecessary to discuss additional arguments and authorities cited by appellant, and the decision of the Board of Interference Examiners is affirmed.

Affirmed.

JACKSON, Judge, sat for COLE, Judge.

GARRETT, Chief Judge, because of illness, did not participate in the decision.