50 CCPA

**Stuart W. SEELEY, Appellant,**

v.

**John L. RENNICK, Appellee.**
**Patent Appeal No. 6927.**

United States Court of Customs
and Patent Appeals.
March 20, 1963.
Rehearing Denied June 3, 1963.

Clarence C. Richard, Jr., Princeton (A. Russinoff, Princeton, N. J., of counsel), for appellant.

Hugh H. Drake, Chicago, Ill. (Francis W. Crotty, Chicago, Ill., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Jr., Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority of invention of the single count in issue in Interference No. 87,763 to John L. Rennick, the senior party. The count reads:

"1. A circuit for utilizing a plurality of signals comprising: at least three electrode systems, individually including an anode, a cathode and a control electrode and having a predetermined control electrode-anode transconductance; a common cathode impedance connecting each of said cathodes with a plane of fixed reference potential and having an impedance value large with respect to the reciprocal of said transconductance; and means for applying said signals between different ones of said control electrodes and said plane of fixed reference potential."

The features of the invention are adequately described in the following excerpt, with figure and reference numerals omitted, from the board's opinion:

"Both involved applications are concerned with a dot sequential color TV system in which the circuitry in issue is utilized to derive signals which are representative of three component colors (red, green and blue) upon which the system is based. In the system illustrated in * * * the Seeley application three pentodes * * * are utilized

in a manner conforming to the requirements of the count in issue to derive from a received composite video signal the three component color signals which are applied to a three-gun color kinescope. The incoming video signal is applied to the number one or control grid of each pentode. For one pentode it is first passed through a delay line which imparts a phase shift of a [sic] 120 degrees. The signal for another tube is similarly given a phase shift of 240 degrees. A locally generated signal at the color subcarrier frequency (3.58 megacycles) is applied directly to the number 3 or suppressor grid of each tube. The cathodes of all three tubes are connected to the negative terminal of a voltage source through a common resistor * * *. The plate and screen grid of each tube are connected through separate resistors to the positive terminal of a voltage supply. The screen grids are also by-passed to their respective cathodes by capacitors * * *. This circuit serves to demodulate the phase modulated color signal to derive signals representing the respective component color signals at the plate of each pentode. The common cathode resistor * * * serves to degenerate or remove from the demodulated color signals any component such as the luminance signal which would otherwise appear at the plate of each tube."

The junior party Seeley, assignor to Radio Corporation of America (RCA), is involved on the basis of an application[1] filed September 11, 1951. Rennick's involved application,[2] assigned to Zenith Radio Corporation, was filed June 20, 1951, and is a continuation-in-part of an application[3] filed March 15, 1951.

Both parties took testimony.

Seeley concedes here, as he did before the board, that Rennick conceived a circuit meeting the terms of the count on December 20, 1950, and that the parent Rennick application filed March 15, 1951, constitutes a constructive reduction to practice of the subject matter. of the count. It is Seeley's position that his own evidence shows conception of the invention by October 5, 1950, actual reduction to practice on April 10, 1951, and diligence from prior to Rennick's entry into the field on December 20, 1950, until the latter date. Seeley makes no contention that his record reflects activity constituting diligence between his alleged actual reduction on April 10, 1951, and his filing date of September 11, 1951. Thus Seeley can prevail only if he has proved all three of his assertions, viz., prior conception, actual reduction to practice, and diligence between the date of conception and the actual reduction to practice.

The board decided adversely to Seeley on the ground that actual reduction to practice was not proved, but also ruled that Seeley had proved conception prior to Rennick. It did not consider the matter of diligence.

■ Seeley, as junior party who filed before issuance of a patent to his opponent, has the burden of proving priority by a preponderance of the evidence. Landon v. Ginzton et al., 214 F.2d 160, 41 CCPA 950.

■ The record shows that Seeley was director of RCA's Industry Service Laboratory during 1950 and 1951, and that he prepared a written disclosure directed to the RCA patent department describing a circuit for use for "color control" in connection with color television. That disclosure was witnessed by one Cook, an engineer working under Seeley, on October 5, 1950. Although the circuit disclosed is not precisely the same as the circuit shown in the Seeley application, the board regarded it as adequate to show conception of an invention meeting the terms of the count.

1. Serial No. 246,052.

2. Serial No. 232,559.

3. Serial No. 215,761.

In late November, or early December of 1950, Horvath, another employee in Seeley's group, started building circuits embodying the invention in issue. Some of that work apparently continued up to about March 29, 1951, and involved some tests and measurements on the circuits, but no use in a television receiver.

Subsequently, Kronenberg, an engineer employed in Seeley's group in 1950 and 1951, modified a color television receiver to incorporate a circuit similar to one disclosed in the Seeley application. Kronenberg testified that he operated that receiver on or before April 10, 1951, the date indicated on his notebook page disclosing the incorporated circuit.

It is Kronenberg's activity with the modified color television receiver that Seeley relies on in support of his claim of actual reduction to practice on or about April 10, 1951. Kronenberg testified that he used that receiver to display test patterns, color bar patterns and color test slides. He describes the results of the operation of the receiver in the following testimony:

"Q48. What were the results of this use?

"A. I only recall being elated at the fact that the circuit seemed to work, in that it seemed perfectly feasible to apply the composite video signal and get cancellation of the luminance from the chrominance channel by means of this common cathode resistor.

"Q49. How was this fact established?

"A. By viewing the picture.

"Q50. And what did the picture show?

"A. I don't recall any gross degradation. The picture was comparable to pictures that were displayed using the conventional color sampling circuitry."

On cross-examination he testified:

"XQ70. Mr. Kronenberg, in testing this circuit of * * * Exhibit N, did you ever in any way bias or short out the 4700 ohm common cathode resistor?

"A. I don't remember.

"XQ71. Did you make any measurements of signal voltages while the circuit was operating?

"A. I probably did. I don't recall the extent to which I might have, except that I have shown voltages here. That is the only guide I have to answering that question. I don't recollect exactly what I did.

"XQ72. What tests of its operability did you make other than the observation of the bar pattern you testified with respect to previously?

"A. I only recall observing the results subjectively with respect to the appearance of the bar pattern, and the test color slides."

The board ruled that the testimony regarding Kronenberg's activities "is not persuasive of the clear conviction of success that is necessary for an actual reduction to practice." We find no error in that position.

As pointed out by Seeley, Kronenberg did state early in his testimony that the tubes in his modified receiver circuit "thereby operated to demodulate the color signal but to cancel out the luminance signal from the color channel." However, that statement constitutes a conclusion which must be evaluated in light of his subsequent detailed testimony, quoted above, concerning the nature of the tests he made. That testimony demonstrates that Kronenberg's conclusions were based on observations of the results of displaying color bar patterns and color test slides on the receiver. He apparently did not observe the test pictures in side by side relationship with those on another receiver subjected to the same test signals, but lacking the circuit for correcting the color signals. Neither did he modify the circuit to render the common cathode resistor therein ineffective. Un-

580

der such circumstances, the tests did not clearly demonstrate to what, if any, extent the common cathode resistor performed its intended function of degenerating or removing undesired components of the luminance signal from the demodulated color signals.

Kronenberg's statement that the circuit "*seemed* to work" (italics supplied) is not conclusive of success. Neither is the testimony that he did not recall "any *gross* degradation" (italics supplied). Seeley emphasizes Kronenberg's statement that the picture was "comparable to pictures that were displayed using the conventional color sampling circuitry." However, the fact that Kronenberg considered the picture produced by his receiver "comparable" to that produced by circuitry which he regarded as "conventional" does not establish that the circuit in question necessarily operated successfully in the receiver.

The board further contrasted Kronenberg's subjective test with tests which Heuer, a witness for Rennick, reported were made on the latter's circuit. Those tests included making waveform analyses at various points, and also making other measurements with the cathode resistor by-passed with a large condenser. We think the fact that such tests were made in evaluating Rennick's circuit is an indication that some test clearly demonstrating that the common cathode resistor was performing the function disclosed for it would have been regarded by workers in the art as necessary to a convincing showing that the circuit used by Kronenberg operated successfully. As noted previously, the record does not show that Kronenberg determined the effect of rendering the resistor ineffective in the latter circuit.

Consideration of the record in light of Seeley's arguments does not convince us that the board erred in ruling that Seeley failed to meet his burden of proving actual reduction to practice.

The decision is affirmed.

Affirmed.