50 CCPA

Dwaine R. FRANKLIN, Appellant,

v.

Robert J. HOPPER, Appellee.

Patent Appeal No. 6891.

United States Court of Customs and Patent Appeals.

Feb. 13, 1963.

body member having a low-drag aerodynamic configuration, said body member being formed of a thin walled body shell, the tenuous walls of which are formed of a nonmetallic material having a low resistance to penetration by objects making impact therewith; a plurality of sheets of metallic foil; support means formed of a low density, nonmetallic material having a relatively high volume weight ratio for mounting the plurality of said sheets in at least three normally intersecting planes, said body shell being mounted about said support means; means bonding the internal contacting surfaces of said body shell to said support means, whereby the latter internally reinforces the body member; and means carried by said body shell for attaching the body member to a towline for tow by a towing aircraft."

The applications each disclose an aerial tow target composed of a streamlined, radar-permeable body shell containing a system of corner reflectors; the reflector system being so constructed as to reinforce the body shell. The aerial tow target is capable of being towed at relatively high speeds by jet aircraft and is used principally for training pilots of fighter or attack planes in the use of automatic fire control equipment. Such equipment is governed or controlled by automatic systems incorporating electronic tracking devices. In prior training programs, metallic tow targets were used since it was necessary to use a material which would reflect a radar beam. However, the malfunctioning of equipment and inexperience of pilots often gave rise to collisions between the aircraft and the metal tow target resulting in damage to or destruction of the aircraft and in same instances, death of the pilot. The aerial tow targets described in the Hopper and Franklin applications lessen the danger of a collision causing serious damage. Although the targets are de-

T. Hayward Brown, H. L. Godfrey, Michael W. Werth, Washington, D. C., for appellant.

George F. Smyth, Smyth, Roston & Pavitt, Los Angeles, Cal., Richard P. Schulze and John J. Byrne, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

This appeal is from the decision of the Patent Office Board of Patent Interferences in Interference No. 88,957 involving Franklin application Serial No. 559,496, filed January 16, 1956, and Hopper application Serial No. 555,858 filed December 28, 1955.

The interference involves a single count which reads:

"An aerial tow target, comprising: a hollow, streamlined, elongate

signed to withstand the stresses caused by high speed towing, they are so light and frangible as to disintegrate if struck by aircraft.

The count did not originally appear in either application but was suggested by the examiner for purposes of the interference. During the motion period, Hopper brought timely motions to (1) dissolve the interference on the ground that Franklin had no right to make the count, (2) declare an additional interference between three proposed counts of an earlier application of his, Serial No. 471,234, filed November 26, 1954, and the involved Franklin application, and (3) substitute his earlier application Serial No. 471,234, for his application Serial No. 555,858.

As the basis for his motion to dissolve, Hopper referred to that portion of the count which reads:

"* * * means bonding the internal contacting surfaces of said body shell to said support means, * * *"

and contended that "Franklin discloses only that his support means are *attached* to the shell." The examiner denied that motion, stating:

"Though Hopper does not cite authority for his position, reference to Webster's New Collegiate Dictionary, second edition, 1956, indicates that the verb *attach* means to *bind* * * *. Also, the transitive verb *bond* is therein defined * * * as to *bind*. Thus the words *bond* and *attach* are in fact sufficiently synonymous to establish Franklin's right to make the count."

The examiner denied Hopper's motion to declare an additional interference, holding none of the proposed counts could be said to define an invention common to both Franklin and Hopper. Hopper's motion to substitute his application Serial No. 471,234 was denied on the ground that no support for two material limitations of the count could be found in the application Hopper proposed to substitute.

Those motions were decided by the examiner as though unopposed by Franklin since Franklin did not appear at the oral hearing before the examiner and did not file any briefs [1] in opposition to the motions until after that oral hearing.

Hopper renewed his motions, designated (1), (2) and (3) above, at final hearing before the Patent Office Board of Patent Interferences. The board, citing Josserand v. Taylor, Jr., 138 F.2d 58, 31 CCPA 709; Scinta et al. v. Anderson, 193 F.2d 1020, 39 CCPA 790, found motion (1) raises a matter ancillary to priority. It also found motion (3) involves a matter ancillary to priority so far as it relates to the right to rely on an earlier copending application. Motion (3), so far as it seeks substitution of the earlier application, and motion (2), were held not to involve matters ancillary to priority.

The board also considered that, insofar as the record shows, the Hopper motion to dissolve appears to stand unopposed by Franklin. It stated:

"* * * Despite the Primary Examiner's ruling that he did not consider Franklin's belated briefs, Franklin's main brief for final hearing is silent regarding the motion to dissolve. Likewise, in his reply brief Franklin has not commented on this motion to dissolve. Except for the argument in the Franklin

---

1. On July 21, 1959, one day after the hearing before the examiner, Franklin filed a motion for leave to file belated briefs containing an explanation purporting to account for the delay, and presented briefs opposing the motions 2 and 3. On July 30, 1959, Franklin filed a paper captioned "Reply Brief" to Hopper's motion to dissolve. The examiner's failure to consider Franklin's briefs was not traversed by Franklin in view of the examiner's denial of Hopper's motion to dissolve.

reply brief opposing the Hopper motion to substitute, the two Franklin briefs for final hearing are devoted primarily to the consideration of the parties' priority proofs. * * * "

The board held that Franklin does not have the right to make the count since his application does not support it.

Hopper also urged before the board that Franklin cannot make the count for an additional reason which he admittedly did not raise below. It was urged that Franklin does not have adequate support in his application for the recitation of "support means formed of a low density, nonmetallic material having a relatively high volume weight ratio" in the count. In support of that contention, Hopper urged before the board:

" * * * the Primary Examiner took the position that the 'light molded plywood, a frangible wood frame covered by a doped fabric, reinforced paper material, or a molded plastic' suggested by Franklin as materials for the body shell were just 'ordinary light-weight materials.' Franklin's application recites that the foundation for the radar reflecting surfaces is composed of a 'frangible material' but the material of this foundation is not further identified.

"Even if it was assumed that the foundation was formed of the same material as proposed for the body shell * * * of Franklin's target, it is not seen even then that the count can be read on the Franklin disclosure. This is so for the count requires the 'support means', cor-

responding to Franklin's foundation, to be formed 'of a low density, non-metallic material having a relatively high volume-weight ratio.' "

The board ruled that, "In the absence of any objection by Franklin at final hearing or in his reply brief, this additional ground for dissolution raised by Hopper will be considered by us," noting that the "low density * * * ratio" material of the count was discussed to some extent in Franklin's reply brief in connection with Franklin's conception and the Hopper motion to substitute.

Passing upon this new issue, the board found Hopper's position to be well founded and agreed with him that the Franklin disclosure lacks support for the count on the additional ground. The board pointed out that Hopper sought to differentiate between the materials he used for the shell and those for the support means, while that was not the case with Franklin. Having reached the conclusion that Franklin cannot make the count, the board stated that there was no need to consider "other issues presented by counsel for the parties."

Franklin urges that the examiner correctly found that his application supports the bonding limitation. Regarding the additional ground for dissolving the interference raised by Hopper before the board for the first time, Franklin urges that it is not ancillary to priority and should not have been considered for the first time at the final hearing. He contends that Rule 258 [2] of the Rules of Practice of the Patent Office precludes consideration at final hearing of the new ground that Franklin cannot make the count. Further he points out that Hop-

2. "258. Matters considered in determining priority. (a) In determining priority of invention, the Board of Patent Interferences will consider only priority of invention on the evidence submitted. Questions of patentability of a claim generally will not be considered in the decision on priority; and neither will the patentability of a claim to an opponent be considered, unless the nonpatentability of the claim to the opponent

* * * relates to matters which have been determined to be ancillary to priority and must be considered, *but a party shall not be entitled to raise such non-patentability unless he has duly presented and prosecuted a motion under rule 232 for dissolution upon such ground or shows good reason why such a motion was not presented and prosecuted.* * * * " [Emphasis ours.]

per did not submit any showing of good cause why such a motion was not presented and prosecuted during the motion period.

With respect to Franklin making that part of the count "means bonding the internal contacting surfaces of said body shell to said support means," Hopper urges that Franklin's arguments ignore the well established rule that, to support a count in interference, an application must specifically disclose each express limitation of the count. It is said that under the broad meaning of the word "attach" as urged by Franklin, Franklin's body shell could be merely secured about the foundation to bring about the attaching of the foundation to the body shell, i. e. that the body shell be merely positioned about the edges of the elements forming the foundation.

As to the board's consideration of that part of the count "support means formed of a low density, nonmetallic material having a relatively high volume weight ratio," Hopper further contends that even where a party to an interference does not bring a motion to dissolve on the ground that his opponent has no right to make the claim forming the issue count of the interference, the fact that such motion was not brought does not prevent the tribunals of the Patent Office from considering the question when it is clear that the party has no right to make the claim forming the count of the interference.

The case involves three questions: first, whether the Franklin patent application supports the limitation "means bonding the internal contacting surfaces of said body shell to said support means"; second, whether the board was correct in considering the contention that Franklin does not support the term "support means formed of a low density, nonmetallic material having a relatively high volume weight ratio"; and third, the merits of the latter contention. If

we find that the board exceeded its authority in considering the second question, the third issue becomes irrelevant.

As to the first question, we do find that the limitation "means bonding the internal contacting surface of said body shell to said support means" is supported by the Franklin application. It is perfectly clear that in stating that the radar reflector supports are "attached" to the shell, Franklin intended that by *some means* the supports would be made secure to the shell. Although we appreciate the significance of the precedents which require that, in interference cases "express limitations" in a count cannot be disregarded,[3] this rule should not be applied so as to allow specific words in a count to make it impossible to use other words to express the same feature in a competing application. We believe it is reasonable to conclude that one skilled in this art would think that "means bonding" and "attached," as used in this situation, for all practicable purposes, are synonymous.

There is nothing in the Hopper application which indicates that "means bonding" constitutes a narrow or restricted limitation. In fact, it seems to us that broad language has been used, in this instance having no special significance, to describe a simple but necessary characteristic of the construction of the tow target. The particular characteristic could have been expressed by the use of a variety of different words.

Coming now to the consideration by the board of Hopper's second allegation that the Franklin application does not support the count, we are of the opinion that the board violated Rule 258 [4] in considering this matter. Of course, it has been conceded that this question, whether Franklin's application discloses "support means formed of a low density, nonmetallic material having a relatively high volume weight ratio," was not raised during the motion

3. In his brief, Hopper cites Jepson v. Egly et al., 231 F.2d 947, 43 CCPA 853.

4. See footnote 2.

period. Also, the question is clearly one which Rule 258 bars a party from raising for the first time at final hearing in the absence of an adequate excuse for not raising it by motion. Since appellee did not raise it at the proper time and did not present an adequate excuse, the board should not have considered it at final hearing. Anderson v. Walch, 152 F.2d 975, 33 CCPA 774.

Without considering the merits of the decisions which hold that in proper cases the board *sua sponte* can dissolve an interference proceeding for the reason that one party clearly has no right to make the claim,[5] this situation does not involve facts by which that principle could be invoked. First of all, Hopper brought this matter to the attention of the board by inserting it in the brief submitted to that tribunal for final hearing. Therefore it obviously was not a *sua sponte* action of the board. In fact, the board, in discussing the question, specifically stated that "this additional ground for dissolution *raised by Hopper* will be considered by us." [Emphasis ours.] Second, as we understand from the argument made by Hopper in his brief, the propriety of such *sua sponte* action is based on it being *"clear* that the party had no right to make the claim forming the count of the interference." [Emphasis ours.] Although we will not decide whether Franklin's application supports the claim language, suffice it to say that the facts here do not warrant the invocation of that principle of law. It is not that clear to us that Franklin cannot support the particular limitation in the count.

The board seems to predicate its right to consider this matter on the fact that Franklin did not object to it at final hearing or in his reply brief. We do not believe that the board has authority to contravene Rule 258 in this case merely because of the failure to object to such contravention at the time the new

issue was first raised. Franklin has now presented his objections before this court and after due consideration we agree with his position.

For the above reasons the decision of the Board of Patent Interferences is *reversed.*

Reversed

5. In his brief, Hopper cites, Eger v. Watson, 104 F.2d 953, 26 CCPA 1411; Heuberger v. Becker, 107 F.2d 601, 27 CCPA 746; Smith v. Foley v. Anderson v. Smith (Commissioner of Patents), 1908 C.D. 210; and Smith and Stadum v. Klemperer (Patent Office Board of Interference Examiners), 103 USPQ 275.