Sumner I. STRASHUN and William F. Talburt, Appellants,

v.

William R. DORSEY and Sumner I. Strashun, Appellees.

Patent Appeal No. 7362.

United States Court of Customs and Patent Appeals.

May 20, 1965.

or web of concentrate on the surface of an endless metal belt which travels over and between a heated drum and a cold drum in an evacuated chamber. The web is preheated in increments from its point of application to the belt until it reaches the heated drum, such preheating being provided by radiant heaters distributed along its path of travel. Heat is also applied to the other side of the web after it passes over the heated drum by additional spaced radiant heating elements. The radiant heat, together with the sub-atmospheric pressure, causes vaporization of the liquid phase of the concentrate. The temperature of the radiant heating elements is maintained sufficiently high to cause puffing of the web and the temperature of the web is raised to a point where the puffed product begins to soften prior to collapse of the puffed structure. That point is called the "pseudo melting point." The web has the desired moisture content and is in puffed condition when it leaves the last radiant heater. Immediate cooling by the cold drum maintains the puffed condition.

Of the nine counts involved, 1, 4 and 7 are representative. Count 1 reads:

"In a continuous process for dehydrating a comestible concentrate consisting of passing said concentrate in a stream from an inlet point to a discharge point separated and entirely disassociated from said inlet point; subjecting said concentrate to sub-atmospheric pressure during its travel from said inlet point to said discharge point; forming said stream into a continuous web of uniform thickness after the commencement of its passage from said inlet point to said discharge point; subjecting said web to heat, puffing said web, and removing moisture from said web during a heating stage of its passage from said inlet point to said discharge point and until the moisture content of the web has been reduced to the desired level; thereafter rapidly cooling said web, as so dehydrated, during a cooling stage of its travel;

John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, Washington, D. C., Samuel J. Heyman, Danbury, Conn. (Rubin Hoffman, Washington, D. C., of counsel), for appellants.

Carl Hoppe, James F. Mitchell, San Francisco, Cal., for appellees.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority of invention in interference No. 91,305 to Dorsey and Strashun, the junior party.

The invention relates to a continuous process for dehydrating liquid or semi-liquid concentrates of juices, for example, orange or other citrus juices, at high temperature under sub-atmospheric pressure. The process involves forming a thin film

and then discharging said web, as so dehydrated and cooled, from said discharge point; the improvement which includes: supplying heat to said web during said heating stage in sufficient quantity to maintain said web at its pseudo-melting point throughout at least the major portion of said heating stage."

Counts 4 and 7 differ from count 1 in the terminal portions beginning "the improvement which includes," and the terminal portions only of those claims are set out:

"4. * * *; the improvement which includes: subjecting said web to a plurality of discrete increments of radiant heat throughout the duration of said heating stage; and adjusting said discrete increments of radiant heat so as to maintain said web at the pseudo-melting point of said web throughout at least the major portion of said heating stage.

"7. * * *; the improvement which includes: subjecting both sides of said web to a plurality of discrete increments of radiant heat during said heating stage; and adjusting said discrete increments of radiant heat so as to maintain said web at the pseudo-melting point of said web throughout at least the major portion of said heating stage."

Each of the remaining counts is dependent on one of counts 1, 4 or 7.

The counts correspond to claims 1 through 9 of patent No. 2,825,653, issued to Dorsey and Strashun on March 4, 1958, on an application filed May 3, 1954, and assigned to Vacu-Dry Company. They were copied verbatim in Strashun and Talburt application serial No. 370,-239, filed July 24, 1953, and assigned to the United States of America as represented by the Secretary of Agriculture. Thus Dorsey and Strashun are the junior party with the burden of proving priority by a preponderance of the evidence.

The Strashun named as co-inventor in both cases is the same person. In March of 1953 he was an employee of the Department of Agriculture working on the problem of dehydrating citrus juice products, particularly orange juice concentrates. Dorsey was an employee of Vacu-Dry Company which was also concerned with the same problem. Dorsey visited Chain Belt Company in Milwaukee from March 9 through 18 of 1953, utilizing equipment there for experiments on dehydration of orange juice concentrates. Strashun arrived at the Chain Belt Company on March 16, 1953, for the purpose of conducting tests of a continuous process for dehydrating orange juice and remained there until April 1, 1953. He observed some of Dorsey's tests on March 16 to 18 before carrying out his own tests thereafter.

Strashun subsequently resigned from the Department of Agriculture and accepted employment with Vacu-Dry commencing in May 1953. On April 29, 1953, before leaving the Department, Strashun signed the Strashun and Talburt application in interference. That application was at least partly based on his experiments at Chain Belt.

When the claims corresponding to the counts were first presented in the Strashun and Talburt application, they were rejected by the examiner on the ground the application did not support limitations requiring the supplying of heat to the web during the heating stage "in sufficient quantity to maintain said web at its pseudo melting point throughout at least a major portion of said heating stage." On appeal, the Board of Appeals reversed the rejection and the interference was then declared.

Neither party filed any motions during the motion period of the interference. The junior party took depositions of both Dorsey and Strashun and introduced exhibits. Strashun and Talburt also introduced exhibits but did not take any testimony themselves. A notebook in which Dorsey kept notes on his experiments at Chain Belt from March 9 through 18 of 1953 is in evidence as Dorsey and Strashun Exhibit 2. A notebook with data on the tests made by Strashun in March of 1953 constitutes Strashun and Talburt

Exhibit A, while certain charts pertaining to those tests are Exhibits A–1 and B–1.

The Board of Patent Interferences handed down three opinions. In what may be called the main opinion, one member discussed the case in detail in holding for Dorsey and Strashun. A second member, in a specially concurring opinion, agreed "completely" with the first opinion but added comments on the applicability of Rule 258 of the Rules of Practice of the Patent Office. In a third opinion, the remaining board member dissented.

After stating "We are concerned only with what is factually *disclosed* in  *  * [Strashun and Talburt's] application," the majority opinion of the board commented on the question raised by the interference as follows:

" *  *  * we are presented with the problem not so much of determining who was the *prior* inventor but of *who* was the inventor of the invention in issue. We are not concerned primarily with the problem of the right to make claims directed to the subject matter disclosed in the involved application but we are concerned with the problem of who invented the subject matter set forth in the counts defining the invention in issue herein."

The testimony of Dorsey and Strashun was summarized by the majority as follows:

" *  *  * the uncontroverted testimony indicates that the invention as set forth in the counts was conceived solely by Dorsey as of March 12, 1953; that while Strashun saw Dorsey have a notebook like Exh. 2, he did not see its contents  *  *  *; that Dorsey only mentioned that  *  *  * he had an idea  *  *  * on how to dehydrate orange juice but did not disclose any details to Strashun while both were at Chain Belt Company in March, 1953; that Strashun did not have a conception of the invention set forth in the counts when he executed the application jointly with Talburt on April 29, 1953; that Talburt never disclosed that invention to Strashun; that the invention set forth by the counts in issue was not inherent in the disclosure in the joint application; that the inventive process could not be satisfactorily practiced on the Chain Belt Company machine or that shown in the application; and that Strashun first was apprised of the inventive concept after he went to work for Vacu-Dry in May of 1953. Thus Strashun in effect has disclaimed conception or knowledge on his part of the invention in issue as of April 29, 1953, the date he executed the joint application with Talburt.

"In contrast to the above-noted testimony, we note that Strashun has *not denied* that he *is* a joint inventor with Talburt of the subject matter *disclosed* in their involved joint application, and that Talburt was not called to testify.

"Our review of the testimony of Dorsey and Strashun in conjunction with their respective notebook entries in Exhs. 2 and A (A–1 and A–2) reveals that there is insufficient basis to sustain a holding that conception of the invention in issue, as set forth in the counts herein, had been established thereby. Thus, our view is consistent with the position taken by the party Dorsey and Strashun in relying on the filing date of their application for the involved  *  *  * patent for both conception and actual reduction to practice. Moreover, there is a substantial mass of evidence revealed tending to show that, contrary to the presumption of joint inventorship of the invention in issue which is relied upon by the assignee of the senior party, Strashun and Talburt are not in fact joint inventors of the *invention in issue* though their joint inventorship of the matter *disclosed* in the joint application is not questioned."

The majority then went on to find that because of Strashun's denial that he had conceived the invention in issue as of the filing date of the Strashun and Talburt application, and the insistence of the assignee of Strashun and Talburt in the brief that the application does disclose the subject matter in issue, "the question of whether the disclosure of the application does or does not evidence conception of the invention in issue is clearly raised." It further stated:

"We have noted in the foregoing that no motions were filed and that the Board of Appeals has ruled that the disclosure of Strashun and Talburt supports the claims corresponding to the counts. Therefore, the matter of that party's right to make those claims as such has not been presented to us for consideration. However,

"The question of priority is to be determined by the Board of Patent Interferences and such factors, as what is necessary to show reduction to practice in a particular case, come within the exclusive jurisdiction of that board.

In re Dickinson et al. [299 F.2d 954], 49 CCPA 951, 133 USPQ 39, 780 O.G. 13; 1962 C.D. 200.

"Moreover, as was stated in the opinion in the case of Landon v. Gintzon [Ginzton] et al. [214 F.2d 160], 41 CCPA 950; 102 USPQ 230; 1954 C.D. 240 (245).

"The law is also clear on the point that it is proper for the board in an interference not only to take into consideration all of the elements recited in the counts but also the statements in the specification which shed light upon the purpose and intentions as to the structures defined by the counts.

"In view of the particular circumstances of this case as set forth in detail and the cases referred to in the foregoing we believe that we are not proscribed from turning to the original disclosure in the Strashun and Talburt application and determining for ourselves whether it does disclose joint conception and possession of the invention in issue by Strashun and Talburt as of the date of execution of that application. We have come to this belief completely cognizant of Rule 258 and the opinions in the recent case of Franklin v. Hopper [312 F.2d 949], 136 US PQ 454; 50 CCPA 931 and in the case of Anderson v. Walch, 33 CCPA 774, 152 F(2) 975, 68 USPQ 215, cited therein, with reference to the necessity of having filed a proper motion during the motion period."

The majority then stated it had "carefully reviewed the original disclosure in the involved application of Strashun and Talburt to determine independently whether there is such a clear teaching therein that one skilled in the art following it would necessarily satisfy the requirements of the copied patent claims," and found that the application does not included such a teaching. It concluded:

"Consonant with our holding that the involved application of Strashun and Talburt does not include a clear teaching of the invention in issue to one skilled in the art, we hold that the presumption that Strashun and Talburt are joint inventors of that invention as of the date of execution of their application is rebutted by a preponderance of the evidence and that they are not entitled to prevail. * * *"

We have quoted extensively from the main or majority opinion because consideration of that opinion in detail is necessary to determine on precisely what grounds the majority based its decision.

While the majority apparently did consider testimony in the depositions of Strashun and Dorsey in arriving at its decision, we think it inescapable that the award of priority was based directly on its conclusion that the Strashun and Talburt application does not support the counts.

It is clear the award was not based on any finding that Strashun and Talburt derived the invention from Dorsey and Strashun. The facts found by the majority, uncontroverted by Dorsey and Strashun, completely negative any support for such a finding. Nor is there any evidence or contention that Dorsey and Strashun jointly conceived the invention at any time prior to the filing date of Strashun and Talburt. It was explicitly noted by the majority that Dorsey testified he did not disclose the concept of the subject matter in issue to Strashun at the time of the tests made at Chain Belt Company in April 1953 and that the first time he disclosed his concept to Strashun was when the latter came to work for Vacu-Dry in May 1953, after the senior party's application was filed.

We also think it plain that the majority did not base its decision on a holding that the testimony here overcame the prima facie case of joint inventorship of the subject matter disclosed in the Strashun and Talburt application which arises from the filing of that application and the oath therein. In an excerpt quoted above, the majority recognized the prima facie case made by the application and expressly noted that "Strashun has *not denied* that he *is* a joint inventor with Talburt

of the subject matter *disclosed* in their involved joint application."

Strashun and Talburt urge here that the board erred in treating the question of their right to make the counts as open for consideration. They observe that, under Rule 258 of the Rules of Practice of the Patent Office,[1] the matter of right to make is a question of patentability which a party may not raise unless he has filed and prosecuted a motion for dissolution under Rule 232,[2] or shows good reason why such a motion was not presented and prosecuted. They further emphasize that Dorsey and Strashun neither filed a motion under Rule 232 nor gave a reason for their failure to do so.

In that contention Strashun and Talburt find support in the opinion of the dissenting board member, stating:

"* * * Whether or not the disclosure of that application [Strashun and Talburt's] supports the invention defined in the counts is, I believe, a matter which Dorsey and Strashun are not entitled to raise, since they have not 'duly presented and prosecuted a motion under Rule 232 for dissolution upon such ground' nor shown 'good reason why such a motion was not presented and prosecuted' (Rule 258).

1. The pertinent part of Rule 258 reads:
"(a) In determining priority of invention, the Board of Patent Interferences will consider only priority of invention on the evidence submitted. Questions of patentability of a claim generally will not be considered in the decision on priority; and neither will the patentability of a claim to an opponent be considered, unless the non-patentability of the claim to the opponent will necessarily result in the conclusion that the party raising the question is in fact the prior inventor on the evidence before the Office, or relates to matters which have been determined to be ancillary to priority and must be considered, but a party shall not be entitled to raise such non-patentability unless he has duly presented and prosecuted a motion under rule 232 for dissolution upon such ground or shows good reason why such

a motion was not presented and prosecuted."

2. Rule 232 in pertinent part reads:
"232. Motions to dissolve. (a) Motions to dissolve an interference may be brought on the ground (1) that there has been such informality in declaring the same as will preclude the proper determination of the question of priority of invention, or (2) that the claims forming the counts of the interference are not patentable, or are not patentable to a particular applicant, while being patentable to another party, or (3) that a particular party has no right to make the claims, or (4) that there is no interference in fact if the interference involves a design or plant patent or application, or if the interference involves a patent, a claim of which has been copied in modified form."

\* \* \* \* \* \*

"Under the directive contained in the recent decision by our Appellate Court in Franklin v. Hopper 50 CCPA 931, 312 F(2) 949, 136 USPQ 454 (See particularly the last four \* \* \* paragraphs of Judge Martin's opinion) I believe that the matter belatedly raised by the junior party should not be considered on the merits and that we should leave the senior party with the right to make the counts, which was unquestioned during the motion period. Accordingly, I believe that the junior party has failed to overcome the burden of proof resting on it, and should not prevail."

We think Strashun and Talburt and the dissenting board member are correct in their position that Rule 258 precludes determination of the interference on the basis of the right of Strashun and Talburt to make the counts. The majority opinion expressses awareness of Rule 258 and of its application by this court in Anderson v. Walch, 152 F.2d 975, 33 CCPA 774, and Franklin v. Hopper, 312 F.2d 949, 50 CCPA 931, but treats it as inapplicable here. Although the reason for that action is not expressly given, it seems to have been taken on the basis that Rule 258 does not preclude consideration of a party's disclosure where that consideration is in connection with the determination of questions of priority that have been raised. However, the majority did not decide the case against Strashun and Talburt on the basis of a priority issue, such as derivation or actual reduction to practice, with ancillary reference to their disclosure. Rather, it decided against them on the ground that they had no right to make the claims in their application, a question of patentability which may be considered at final hearing only on terms set out in Rule 258.

The concurring opinion states that "consideration of pertinent and competent evident [evidence] *bearing on the priority question in issue at several points* should not be excluded from con-

sideration by a technical application of Rule 258." [Emphasis supplied]. That statement seems to imply that the disclosure of Strashun and Talburt was considered merely as evidence on a priority question. However, it is our opinion that the main basis on which the decision here was grounded was the ancillary question of right to make and that the testimony of Strashun and Dorsey was considered as evidence in reaching a decision adverse to the party Strashun and Talburt on that question.

The concurring opinion observes that, since the Board of Appeals had already decided that the Strashun and Talburt application supports the counts, a motion for dissolution on the basis of lack of right to make "would not have been set for hearing before the Primary Examiner but deferred to final hearing (Belchetz v. Sharman, 103 USPQ 296) on the ground that the Primary Examiner would be bound by the decision of the Board of Appeals." It concludes that a motion challenging the right of Strashun and Talburt to make "would have been mere motion, gaining nothing."

Dorsey and Strashun adopt that statement from the concurring opinion, arguing that the record itself thus "shows good reason why" a motion "directed to the deficiencies in appellants' disclosure was not presented and prosecuted." They also adopt as an argument the following statements from the concurring opinion:

"The purpose of Rule 258 was and is to try to insure that the expert knowledge of the Primary Examiner be brought to bear on points determinable upon the application file records so that his views may be of record for consideration at final determination. \* \* \*"

We are unable to agree that Rule 258 is not applicable here, particularly since the real ground for the board's decision is a finding of lack of right to make the counts. The rule is directed specifically to such a situation and we do not find any basis for automatically exempting a party from its provisions because the Board of Appeals has ruled his op-

ponent does have the right to make the counts. While we do not doubt that *one* purpose of Rule 258 is to obtain the examiner's views on a question of right to make, it cannot be assumed that the rule does not also have the additional purpose of informing the party that his right to make is under attack.

■ Although we must reverse the decision of the Board of Patent Interferences on the ground that it erred in considering the right of Strashun and Talburt to make the counts, we think its decision would require reversal even if it had been proper to consider that question.

In its ex parte ruling that Strashun and Talburt can make the counts, the Board of Appeals said:

"As we interpret the disclosure in the patent, the pseudo-melting point is a continuously rising temperature range * * * not a constant temperature as indicated by the examiner. The rise in temperature is apparently manually controlled with respect to visual tests and the progressively rising temperature is maintained at a point where the puffed product begins to soften *prior* to collapse. Since the drying occurs very rapidly, apparently in less than two minutes * * * and the operator must rely upon his sight and judgment to determine the point where the highly * * * puffed product begins to soften, we consider operation in the highly puffed state to be indistinguishable to the observer from operation at the softening point prior to collapse. Operation in highly expanded condition, argued and disclosed by appellants to be critical for appellants' dehydration, is in our opinion within the patent disclosure of a temperature at the pseudo-melting point. This holding is further strengthened by the statement in * * * the patent, that the web, as it leaves the last radiant heater, still has its *puffed* constitution. In our opinion, therefore, appellants' disclosure, wherein the web has applied to it

sufficient heat to maintain it in a greatly expanded condition, short of the temperature of collapse, throughout the very short dehydrating period supports the critical limitation in the claim as to supplying heat so as to maintain the web at the pseudo-melting point and therefore we will not sustain the examiner's rejection."

We agree with that conclusion. Moreover, we find it supported by statements in the Strashun and Talburt application which indicate that the product is heated to a sponge-like form and plastic character during dehydration. Thus, it is stated:

"In order for the dehydration to operate properly, the film of liquid must expand in volume to a large degree and remain in such expanded condition throughout the process. When this expansion takes place *the product is in a porous, sponge-like form*—it is easy to * * * remove from the belt or drum, breaking up readily into free-flowing particles or flakes which exhibit a very high rate of rehydration when contacted with water to prepare a reconstituted juice. * * * [Emphasis supplied].

\* \* \* \* \* \*

"Referring again to the drawing, belt * * * carries the pre-dried film about drum * * * whereby the principal dehydration takes place. The dehydrated film still in its expanded condition then passes about drum * * * where *the film is cooled so that it will lose its plastic character* and become relatively brittle and easy to remove from the belt * * * ." [Emphasis added].

Here, Dorsey and Strashun urge that Strashun and Talburt emphasized a step of incorporating non-toxic gas into the liquid concentrate before dehydration as an important novel feature of their disclosure in arguing before the examiner. No significance is seen in that contention since the application undeniably discloses

as an alternative a form in which such gasification is omitted.

Dorsey and Strashun also attempt to make much of the fact that their patent defines "pseudo-melting point" as "the point where the puffed product begins to soften prior to a collapse of the puffed structure" while the Strashun and Talburt application defines "pseudo-melting point" as "the temperature range in which the expanded film will collapse." They then state that use of the latter definition in construing the counts would result in their defining a process in which the film is heated to a temperature at which it would collapse, an event which both parties seek to avoid. The very stating of this latter proposition demonstrates its lack of validity for it is plain and uncontroverted that Strashun and Talburt teach that the web must not be heated to the temperature at which it will collapse.

■ The majority of the Board of Patent Interferences emphasized that Strashun stated that the first time he knew of the concept set out in the part of the counts following "the improvement which includes" was after he came to work for Vacu-Dry and that both Strashun and Dorsey stated that concept was Dorsey's alone. It appears that testimony might well have been one of the principal reasons for disagreement with the conclusion of the Board of Appeals on the right of Strashun and Talburt to make the counts. We are not inclined to regard that testimony as outweighing what appears clearly to be an adequate disclosure of the contended invention in the application, however. Strashun and Dorsey testified more than nine years after the events in question and after Strashun had changed his employment from the Department of Agriculture to Vacu-Dry. Moreover, the meaning of the counts and the question of right to make involve legal conclusions on which the opinions of Strashun and Dorsey are certainly not conclusive.

The decision of the Board of Patent Interferences is reversed.

Reversed.